# Lindemann v. Pittsburgh Railways Company, Appellant.

*Negligence—Street railways—Releases—Mental capacity—Case for jury—Charge—Inadequacy—Waiver.*

1. In an action against a street railway company to recover damages for personal injuries occasioned to a passenger, where defendant relied upon a release of all damages for a consideration of $50.00 alleged to have been executed by plaintiff, but where there was evidence, though contradicted, that plaintiff was not capable of comprehending his act and its nature and probable consequences in executing the release, the case was for the jury and a verdict for the plaintiff was sustained.

2. In such case the defendant was in no position to complain that the failure of the court to explain to the jury the meaning of "clear, precise and indubitable" used in describing the quality of proof required to overthrow a written instrument, was error where at the conclusion of the charge, counsel were requested to direct the court's attention to any matters to which they wished the attention of the jury drawn, and defendant's counsel did not indicate any specific respect wherein the charge was lacking, especially where points for charge submitted by defendant were affirmed by the court, and where counsel for defendant, in his address explained to the jury in the language of the Supreme Court, the meaning of "clear, precise and indubitable" and such explanation was not questioned.

Argued Oct. 12, 1915. Appeal, No. 47, Oct. T., 1915, by defendant, from judgment of C. P. Allegheny Co., Jan. T., 1913, No. 2250, on verdict for plaintiff in case of J. G. W. Lindemann v. Pittsburgh Railways Company. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ. Affirmed.

Trespass to recover damages for personal injuries.

The facts appear in the following opinion of BROWN, J., sur defendant's motion for a new trial:

In a collision between cars of the defendant company, the evening of September 1, 1912, plaintiff, a passenger

on one of them, was seriously injured. He was taken to the Pittsburgh hospital the same evening.

His appearance at the trial was pitiful. He seemed to be a physical and mental wreck. One of defendant's witnesses testified that plaintiff—at the trial—looked better than he did at the time he was in the hospital suffering from his injuries.

In bar of plaintiff's right to recover damages, defendant set up a written release executed by him in the hospital the day following his arrival there—releasing and satisfying, for a consideration of fifty dollars paid him, his claim for damages. The validity of the release was denied by him on the ground of mental incapacity to execute it. Defendant's points read to the jury and affirmed by the court were:

"1. If the jury believe from the evidence that the plaintiff signed the release when he was rational, and either read or had read to him the contents of the release, your verdict must be for the defendant.

"2. If the jury believe from the evidence that the plaintiff signed the release when he was mentally capable of knowing its contents but later developed mental weakness, the release is binding and your verdict must be for the defendant.

"3. If the jury believe from the evidence that the plaintiff signed the release when mentally capable of knowing its contents, and accepted the money named in the release, he is barred from recovery, and your verdict must be for the defendant."

The issue of fact for the jury was: Whether, at the execution of the release, plaintiff was capable of comprehending his act, its nature and probable consequences. If he was, defendant was entitled to a verdict. If not, he was entitled to a verdict. Upon this issue the jury found in his favor.

Numerous witnesses—lay and expert—testified touching his mental condition after the accident—and preceding, during and following the execution of the re-

lease; some of them testifying to direct observation of his conduct and action, and some, upon hypothetical questions put to them—all this for the purpose of determining his mental condition—mental ability or nonability to transact business, to execute the release. This testimony of direct facts and of opinions based on them took a wide range. Some of plaintiff's witnesses testifying that after the accident—before he reached the hospital, and while in the hospital—his mind was dazed, confused; lacking ability to carry on coherently and connectedly conversation touching the ordinary affairs of life—incapable of transacting business. Some of defendant's witnesses testifying that his mind was not impaired, but sufficiently rational to understand the transaction covered by the release.

It is plain that the execution of the release, to be legally binding on him, required more than his mere signature. It was necessary that both mind and will should co-operate in the execution and delivery of the instrument. Plaintiff's testimony asserted there was no such co-operation; defendant's, that there was. If there was not such co-operation "then, in contemplation of law, there was no execution and delivery of the alleged release. A substantial question of fact was thus presented which it was the exclusive province of the jury to determine in the ordinary way": Gibson v. Western N. Y. & Penna. R. R. Co., 164 Pa. 142, 157.

The next issue of fact for the jury related to (a) the nature and extent of his physical, nervous and mental ailments; (b) drug, doctors and hospital bills; (c) loss of earnings; (d) pain and suffering and inconvenience.

Touching the physical, nervous and mental ailments, much testimony was presented—the opinions of the doctors and specialists varying to some extent; some of them expressing the view that plaintiff might get better or some better; and some, that he was not likely ever to

recover in any substantial degree—but more likely to grow worse.

At the conclusion of the charge counsel were requested to direct the court's attention to any matter to which they wished the attention of the jury drawn. To this request counsel did not indicate in what specific respect the charge was lacking; and the court learned only by the argument of defendant's counsel on his motion for a new trial that it was the failure to explain to the jury the meaning of "clear, precise and indubitable." Under the circumstances, the answer to that is:

(a) The suggestion of counsel—in response to the court's request at the end of the trial—was general and not specific. Had counsel specifically (orally or by point in writing) drawn the court's attention, it would have been an easy matter to reply to it.

(b) Defendant's counsel, in his address to the jury, clearly explained and defined the meaning of "clear, precise and indubitable"—explained and defined it as the Supreme Court had in numerous decisions:

"Indubitable proof......is evidence that is not only found to be credible, but of such weight and directness as to make out the facts alleged beyond a reasonable doubt."

"When the terms 'clear, precise and indubitable' are used by the courts to define the requisite proof of a fact, it is meant that the witnesses shall be credible, that the facts are distinctly remembered by them, that details are narrated exactly, and that their statements are true."

His explanation to the jury was conceded. No one disputed it. The jury got the benefit of it; and the failure to again call the jury's attention to it cannot be charged to the court as error.

Had the court been sitting as a chancellor in an equitable proceeding to cancel and declare void the release upon the ground of plaintiff's mental incapacity to execute it, it would have declared the instrument void—for the testimony of such incapacity was strong and con-

vincing, "clear, precise and indubitable." As said by the Supreme Court in Highlands v. Philadelphia & Reading R. R. Co., 209 Pa. 286, 297: "We are of opinion that the testimony at the trial was ample to sustain a chancellor in reforming the release."

As already suggested, many lay and expert witnesses testified touching the issues submitted to the jury. The credibility of their testimony—all oral—was to be weighed by the jury: Reel v. Elder, 62 Pa. 308; Duffy v. York Haven Water & Power Co., 233 Pa. 107, at p. 110. Credibility is the touchstone of testimony in the measure of its weight. The weight of testimony is that which the jury determines after considering the various elements necessarily entering into its make-up; such as, the manner and appearance of the witnesses on the stand; their bias and interest in the subject matter of the controversy; the consistency and inconsistency, contradiction and variation in the stories told by them; and other surrounding circumstances giving it an impress weak or strong, true or false. Some testimony may be as good as gold, as genuine as a standard coin, and some, as worthless as a counterfeit. Testimony may bear the stamp of truth or the badge of fraud and perjury. Who is to pass upon its value? The jury alone. The court cannot invade the province of the jury. The court's supervisory control rests in the discretion to grant new trials.

The charge, we think, fully and fairly explained to the jury: (a) the issues of fact to be passed on by it; (b) in connection with the meaning of "clear, precise and indubitable," as defined by defendant's counsel in his argument to the jury—the method of weighing and measuring testimony, lay and expert; (c) the duty of determining the nature and extent of the resulting injuries—nervous, mental and physical; (d) the measure of damages.

Believing—in the light of all the circumstances—that

a fair trial was had and substantial justice reached by the verdict, a new trial is refused.

Verdict for plaintiff for $13,000.00 and judgment thereon.  Defendant appealed.

*Error assigned* was the charge to the jury.

*Richard C. Long,* with him *Clarence Burleigh* and *William A. Challener,* for appellant.

*Rody P. Marshall,* with him *Thomas M. Marshall,* for appellee.

PER CURIAM, January 3, 1916:

This judgment is affirmed on the opinion of the learned court below, denying the motion for a new trial.

Judgment affirmed.

---

## McCosh, Appellant, *v.* Jones & Laughlin Steel Company.

*Negligence—Master and servant—Platforms about machinery—Guards—Act of May 2, 1905, P. L. 352, Sec. 11—Assumption of risk—Judgment for defendant n. o. v.*

1. The Act of May 2, 1905, P. L. 352, Section 11, requiring machinery to be properly guarded, does not require that a platform, built for the purpose of giving workmen a place on which to stand when performing work about a furnace, and which has nothing to do with the operation of the furnace, be equipped with guard-rails, and the absence of a guard-rail will not render the employer liable to a workman for damages resulting from his fall from the platform, under the provisions of the said act.

2. Where a workman, standing on a movable platform, which was not equipped with a guard-rail, attempted to adjust one of the boards with a hook and in so doing fell from the platform and sustained personal injuries, it was apparent that the dangers of the situation were known to him and that he voluntarily assumed the risk, and cannot recover in an action against his employer.