# Wilson, Appellant, *v.* Adams Express Company.

*Practice, C. P.—Action of trespass—Affidavit of defense—Practice Act of 1915, Section 13.*

Under the provisions of Section 13 of the Practice Act of 1915, it is not necessary to file an affidavit of defense in an action of trespass. The first clause of the 13th section recites a number of facts, which the averments of the declaration may be considered to establish, if they are not denied by an affidavit. Any other defense may properly be heard at the trial of the action, even where no affidavit of defense is filed.

*Common carriers—Express companies—Interstate commerce— Uniform live stock contract—Limitation of liability—Amendment*

*of Interstate Commerce Act—Act of Congress of August 9, 1916—39 Stat. at Large, p. 441.*

The Act of Congress of August 9, 1916, 39 Stat. at Large, p. 441, modifies the Cummins's Amendment to the Interstate Commerce Law, which prohibited the limitation of liability for negligence, in a shipping contract. Since the passage of the Act of August 9, 1916, a carrier may limit its liability for negligence with regard to certain kinds of property, received for transportation, in which are included animals other than ordinary live stock. Race horses come within the category of animals on which there can be a limitation of liability.

In an action of trespass to recover the value of a shipment of horses, injured through the negligence of the carrier, the shipper cannot recover beyond the valuation, stipulated in the uniform live stock contract, where there is ample evidence to show that the horses were used for racing purposes and were not "ordinary live stock."

*Common carriers—Uniform live stock contract—Construction.*

A limitation in a uniform live stock contract to liability of a certain amount fixes the maximum liability of the carrier, and where the injury resulting from the defendant's negligence exceeded the amount of the limitation, the shipper can recover to the full amount stipulated in the contract.

Argued Nov. 12, 1918. Appeal, No. 200, Oct. T., 1918, by plaintiff, from judgment of C. P. Lycoming Co., June T., 1917, No. 162, in favor of plaintiff in case tried by the court without a jury, in the suit of H. H. Wilson v. Adams Express Co. Before Orlady, P. J., Porter, Henderson, Head, Kephart, Trexler and Williams, JJ. Affirmed.

Trespass to recover damages for injuries to a carload of horses. Before Whitehead, P. J., without a jury.

The facts are stated in the opinion of the Superior Court.

The court found in favor of the plaintiff for $1,346. Subsequently the court modified its order and entered judgment in favor of the plaintiff against the defendant in the sum of $959. Plaintiff appealed.

386   WILSON, Appellant, *v.* ADAMS EXPRESS CO.

Assignment of Errors—Opinion of the Court. [72 Pa. Superior Ct.

*Errors assigned* were various findings of fact and conclusions and the judgment of the court.

*Max L. Mitchell,* and with him *N. M. Edwards,* for appellant.—The defendant did not file an affidavit of defense and could not, therefore, avail itself of the provisions of the uniform live stock contract: Adler v. Tucker, 26 D. R. 977; Miller v. Pennsylvania Railroad Company, 29 York Legal Record 200; Vinklestein & Howitch v. National Insurance Company, 16 Lackawanna Jurist 310; Edelman v. Moser, 60 Pa. Superior Ct. 637.

The defendant could not limit its liability for negligence: Hughes v. Railroad, 202 Pa. 222, 226; Wright v. Adams Express Company, 43 Pa. Superior Ct. 40, 44.

The carrier was liable for the maximum amount set forth in the uniform live stock contract: Starnes v. Louisville & N. R. Co., 19 S. W. 625; Ficklin v. Wabash R. R. Co., 93 S. W. 861.

*C. LaRue Munson,* of *Candor & Munson,* and with him *Thomas Dewitt Cuyler,* for appellee, cited: Act of June 29, 1906, 34 St. at L., p. 595, c. 3591, Sec. 7; Act of March 4, 1915, 38 St. at L., p. 1197, c. 176; Act of August 9, 1916, 39 St. at L., p. 441, c. 301; American Express Co. v. U. S. Horse Shoe Co., 244 U. S. 58; Dodge v. Adams Express Co., 54 Pa. Superior Ct. 422; Wright v. Adams Express Co., 54 Pa. Superior Ct. 485; Hertz v. Adams Express Co., 55 Pa. Superior Ct. 378; Ruppel v. Allegheny Valley Ry., 167 Pa. 166; Rhymer v. D., L. & W. R. R. Co., 27 Pa. Superior Ct. 345; Cin., N. O. & T. P. Ry. Co. v. Rankin, 241 U. S. 319.

OPINION BY HEAD, J., July 17, 1919:

On February 24, 1917, the plaintiff delivered to the defendant company seven horses for transportation from Williamsport, Pennsylvania, to the City of New York. The defendant is and was a common carrier engaged in

interstate commerce. The car in which the horses were loaded for transportation and in which they were being carried was wrecked at or near Bristol, Pennsylvania. Four of the horses were killed and the remaining three injured. The plaintiff brought this action of trespass to recover damages for the loss thus sustained by him. The defendant filed no affidavit of defense. At the trial the company offered in evidence a copy of a uniform livestock contract which had been signed by the plaintiff when he delivered the horses to the defendant for transportation. In this contract the value of each one of the horses was fixed at the sum of $200, and by reason of that valuation the plaintiff secured the minimum rate for transportation allowed by the schedules filed. To the offer of this evidence it was objected that inasmuch as the defendant had filed no affidavit of defense setting forth the contract limiting its liability, it was precluded from making use thereof at the trial. The learned trial judge overruled the objection and admitted the offer and this ruling is made the basis of the fourth assignment of error.

The correctness of this ruling is to be determined by the construction to be placed on Section 13 of the Practice Act of 1915. We quote it: "Section 13. In actions of trespass the averments, in the statement, of the person by whom the act was committed, the agency or employment of such person, the ownership or possession of the vehicle, machinery, property or instrumentality involved, and all similar averments, if not denied, shall be taken to be admitted in accordance with section six; the averments of the other facts on which the plaintiff relies to establish liability, and averments relating to damages claimed, or their amount, need not be answered or denied, but shall be deemed to be put in issue in all cases unless expressly admitted." We may observe in the first instance there is no flat requirement in the act that an affidavit must be filed by the defendant in actions of trespass. There is no provision made for a summary judgment for the failure to file such affidavit. It must fol-

low therefore the statute contemplated that substantial defense along many lines might be properly heard in the trial of an action of trespass even where no affidavit had been filed. Such seems to be the plain reading of the section we have quoted. Its first clause mentions a number of facts frequently not the subject of any substantial contest where the averments of the declaration may with propriety be regarded as established facts, if not denied by an affidavit. The second clause of the section, however, we think declares in no doubtful terms that notwithstanding the absence of an affidavit, the plaintiff must still carry the burden of proof of the facts necessary to establish the legal liability of the defendant and the amount thereof except as to such matters as are mentioned in the first clause of the section or may be fairly said to be ejusdem generis with those mentioned. The fourth assignment is therefore overruled.

A more serious question arises when we come to consider the proper measure of damages as such measure would be applicable to the facts found by the learned trial judge. We may best state the difficulty by quoting the sixteenth, seventeenth and eighteenth of the findings referred to.

"Sixteenth: All of said horses were valuable, both for ordinary purposes and for racing, but their chief value was for racing purposes. The pony, however, was valuable only for ordinary purposes.

"Seventeenth: The value of each of said horses at and immediately before the accident for all purposes, including racing, was as follows:

Little Jewel (killed), ...............$800
Bell Cord (killed), .................. 800
Flora Demand (killed), ............. 750
Captain R. (killed), ................ 750
Hal Direct (injured), ..............1,000
Little Director (injured), ..........1,000, etc.

"Eighteenth: Because of the accident, Hal Direct, when redelivered to the plaintiff, was worth only $100,

Little Director was worth $700, and the pony, Daisy, was worth only $50."

We have then first to consider, was the plaintiff entitled to recover the full and actual value, as found by the court, of the horses killed and the full and actual money value of the injuries suffered by those which survive, measured by the same finding? Had the federal law, as it stood immediately after the passage of the Act of March 4, 1915, known as the "Cummins Amendment" remained unchanged, it is clear the plaintiff would have been entitled to so recover. The statute, as then amended, declared that the carrier company should be liable to the shipper "for the full actual loss, damage or injury to such property caused by it or by any such common carrier to which such property may be delivered, etc., notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is hereby declared to be unlawful and void." With that amendment in force, the federal law would have been brought into harmony with the law of Pennsylvania as it had always been declared, thus denying to the carrier, by the terms of the statute, the benefit of a defense which had always been denied to it in the State of Pennsylvania on the ground of public policy. The very next Congress, however, by the Act of August 9, 1916, 39 St. at Large, page 441, introduced a new element into the determination of cases like the one at bar. It declared "That the provisions hereof respecting liability for full actual loss, damage or injury, notwithstanding any limitation of liability or recovery or representation or agreement or release as to value, and declaring any such limitation to be unlawful and void, shall not apply:

1. To baggage, carried on passenger trains or boats or trains or boats carrying passengers;

2. To property, except ordinary live stock, received for transportation concerning which the carrier shall have been or shall hereafter be expressly authorized or re-, quired by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the release value of the property, in which cases such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released......The term "ordinary live stock" shall include all cattle, swine, sheep, goats, horses and mules except such as are chiefly valuable for breeding, racing, show purposes or other special uses, etc.

Now the learned trial judge—who by agreement tried the case without a jury—found as a fact that all of the horses save the pony, which were the subjects of the shipment, were not ordinary live stock but were chiefly valuable for racing.  By this finding the horses were brought within the class to which the latest statute, as we have quoted it, declared the terms of the earlier act with relation to limitations as to liability should not apply.  If this finding is supported by testimony, it would warrant the conclusion reached by the trial judge that the limited valuation, fixed by the plaintiff himself upon the property he shipped, was the lawful limit beyond which his recovery could not go.  We think there was ample evidence to warrant the finding.  It largely consisted of the acts and declarations of the plaintiff himself.  The horses were bred on both sides from strains of racing blood.  It appeared they had been used for racing purposes and had established records that ought to enable them, if wisely handled, to win considerable sums of prize money. That they were not "ordinary live stock," within any ordinary conception of the meaning of that expression, is agreed to even by the able counsel for the appellant.

The manner in which the plaintiff had his horses shipped, the number of attendants he sent with them, and all of the circumstances surrounding the shipments, fairly indicated that he regarded them as racing animals but was trying to secure the cheapest rate of transportation which the defendant company could lawfully impose. There would be but little chance to make even a plausible argument that these horses were "ordinary live stock" within the meaning of the statute, were it not for another finding of fact made by the learned trial judge to which we now direct our attention.

After having found in the seventeenth finding which we have in part quoted the value of each horse for "all purposes including racing," he then added another schedule fixing the value of each of the said horses before the accident for ordinary purposes.   These values were as follows:

| | |
|---|---|
| Little Jewel, | $700 |
| Bell Cord, | 600 |
| Flora Demand, | 600 |
| Captain R., | 600 |
| Hal Direct, | 700 |
| Little Director, | 700 |
| The Pony, | 200 |

A comparison of these values with those fixed in the schedule first quoted furnishes the key to the very plausible argument urged by the able counsel for the appellant.   He argues that a consideration of these figures shows conclusively that these horses were chiefly valuable for ordinary purposes and therefore were ordinary live stock within the meaning of the statute, and he consequently challenges the soundness of the all-important finding of the learned trial judge that they were chiefly valuable for racing purposes and thus brought within the terms of the proviso in the Act of 1916.   If the two findings of the learned trial judge referred to are to be considered as inconsistent and antagonistic to each other, our conclusion is that the finding the horses were "chiefly

valuable for racing purposes" is the one better sustained by the evidence and more in harmony with a proper construction of the entire statute and its manifest purposes. We therefore agree with the learned trial judge that, as to the horses killed outright, the limitation as to their value agreed on and accepted by the plaintiff for the purpose of fixing the rate of transportation, was a lawful limitation which measures the extent to which he has a right to recover.

But three of the horses included in the shipment were not killed. They sustained serious injury and were returned to the plaintiff in their injured condition. Now the learned trial judge held that although the injury sustained by each of them may have exceeded the sum of $200, which measured the extent of the defendant's liability, yet if there remained, by way of salvage, a value equal to or greater than $200, there could be no recovery at all; if the salvage value was less than $200, then the difference between that value and that sum should measure the plaintiff's recovery. To this conclusion we cannot agree. This portion of the plaintiff's property was injured and reduced in value by the negligent act of the defendant, for so the court has found. Now the statute declares that such limitations of value as the plaintiff agreed to in this case "shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released." In other words, where injury to a plaintiff's property resulted from a negligent act, the provisions of the statute were not intended to exempt or release the defendant from any liability but to mark a line beyond which a recovery could not go. In the cases of the horses Hal Direct and Little Director, it has been found that the injury resulting from the defendant's negligent act, measured in dollars and cents, was far in excess of the amount to which liability was limited. Were it not for the contract he signed, the plaintiff could have recovered the full value of his loss. The defendant's lia-

bility is not dependent on the fact that in the one case the horse was killed whilst in the other he survived. In either case it must pay for the injury resulting from its negligent act without regard to the fact that one horse succumbed and another survived if the loss in value of the latter was equal to or greater than the limited sum fixed by the plaintiff in his transportation contract. Our thought in this respect is well expressed in the following language from the opinion of Mr. Justice CALDWELL in Starnes v. Louisville & Nashville R. R., 19 Southwestern Rep. 675: "The true measure of liability under the contract is the amount of actual damages resulting from the negligence of the carrier, in no case to exceed the sum stipulated. This is the most natural and reasonable construction of the contract. It is fair and just to both parties. A shipper will not be heard to claim to recover for damages or loss, however great, in excess of the amount named in the bill of lading as the agreed value, nor will the carrier be allowed to deny liability for actual damages up to that amount. The carrier must respond for negligence up to that value, but no further." The plaintiff was therefore entitled to recover the sum of $200 for the injury to each of the two horses last named.

We are at a loss to know to what extent, if at all, we are to deal with the question of the plaintiff's loss of the value of certain equipment or paraphernalia (racing sulkies, harness and the like) shipped in the same car with the horses. It was totally destroyed. The court found as a fact that its value was $378.30 and in the fourth conclusion of law determined the plaintiff was entitled to recover that sum. In disposing of exceptions filed to the findings, the learned judge below struck out that finding in the following language, "Counsel for both parties agree that if the court was right in its second conclusion of law, then it erred in its fourth conclusion of law." The second conclusion of law referred to was this: "The plaintiff having fixed the value of the horses in the contract of shipment, he was estopped from show-

ing (recovering) a greater value than the sum so fixed."
As we have stated, we are of opinion that was a just con-
clusion.  How it affected the plaintiff's right to recover
for the loss of his property, to wit, equipment, etc., is not
just now clear to us.  However, as we find no discussion
of this question in either of the paper-books filed, we feel
bound to assume the correctness of the statement made
by the learned judge in reference to the matter.  We
therefore express no views on this question.

The remaining assignments of error to which we have
not adverted in this opinion have been considered but we
find nothing in any of them that would sustain a judg-
ment of reversal.  As we have before us all of the data
necessary to correctly fix the amount of the judgment
that should be entered in favor of the plaintiff, there ap-
pears no sound reason why we should not exercise our
power to modify the judgment and thus put an end to
the case.  It would follow from the application of the
principles laid down in this opinion to the facts that
judgment should be entered in favor of the plaintiff as
follows:

For each one of the four horses killed the sum of
$200, to wit, ............................... $800
For each of the two injured horses the like sum of
$200, to wit, .............................. 400
For injury to the pony the sum of .............. 150

Total, ............................. $1,350
From this total the defendant is entitled to take
credit for the sum of ..................... 168

—the transportation charge which was not paid,
leaving a net balance of .................. $1,182
which in accordance with the federal law and practice
should bear interest from the 25th of February, 1917.
Judgment is accordingly entered in favor of the plaintiff
and against the defendant for this sum.

The costs of this appeal to be paid by the appellee.