. Leonard *v.* Coleman, Appellant.

*Negligence—Release of damages — Affidavit of defense — Evidence—Act of May 14, 1915, P. L. 483.*

1. Under the Act of May 14, 1915, P. L. 483, defendant in an action of trespass is not obliged to file an affidavit of defense.

2. If none is filed the only penalty is that certain specified kinds of averments in the statement of claim, shall be taken as admitted.

3. As the Act of 1915 expressly provides that "averments relating to damages" need not be answered or denied, and as a release is a release of damages, the defendant is entitled to offer in defense at the trial a release of damages, although he has not filed an affidavit of defense.

4. Where, in a negligence case, defendant sets up a release of damages executed by plaintiff, and the latter seeks to have the jury disregard it, and the essential facts in regard to its execution are indispute,, the burden is on plaintiff to prove the facts upon which she relies, beyond a reasonable doubt, by evidence which is clear, precise and indubitable, and by witnesses who are credible, who distinctly remember the facts to which they testify, and narrate the details exactly.

5. Under the evidence in this case plaintiff did not meet the burden cast upon her, and a verdict in her favor was set aside on appeal, and judgment n. o. v. entered for defendant.

Argued January 11, 1922.   Appeal, No. 124, Jan. T., 1922, by defendant, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1920, No. 8267, on verdict for plaintiff, in case of Mary Ann Leonard v. Charles Coleman.   Before FRAZER, WALLING, SIMPSON, KEPHART and SCHAFFER, JJ.   Reversed.

Trespass for death of plaintiff's husband.   Before BARRATT, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $8,000.   Defendant appealed.

*Error assigned,* among others, was refusal of defendant's motion for judgment n. o. v., quoting record.

*Ward C. Henry,* with him *C. William Freed,* for appellant.—The lower court erred in refusing binding instructions for defendant on the ground that the release executed by plaintiff constituted a valid and conclusive defense to her claim: Seeley v. Traction Co., 179 Pa. 334; Spitzer v. R. R., 226 Pa. 166; Fuller v. Law, 207 Pa. 101; Thomas v. Herring, 244 Pa. 550.

*William H. Wilson,* with him *Francis M. McAdams,* for appellee.—At no time did appellant avail himself of any of the provisions of the Practice Act of May 14,

1915, nor the rules of the courts of common pleas: Ruth-Hastings Glass Tube Co. v. Slattery, 266 Pa. 288; Meyers v. Trust Co., 75 Pa. Superior Ct. 40.

The evidence was clear, precise and indubitable and showed that false representations made by the agents of appellant induced the execution of the release: Vanormer v. Machine Co., 255 Pa. 47.

OPINION BY MR. JUSTICE SCHAFFER, February 6, 1922:

Defendant appeals from a judgment recovered in an action of trespass for damages for the death of plaintiff's husband, who was struck and killed by appellant's automobile. A release executed by plaintiff is set up as a bar to her recovery.

At the threshold of consideration of the main question, we are met by appellee's contention, that the release was improperly received in evidence, and, hence, can play no part in the determination of the case. This position is based on the fact that defendant did not file an affidavit of defense, and, therefore, it is urged, did not plead the release and cannot, under the Practice Act of May 14, 1915, P. L. 483, interpose it as a defense. In an action of trespass the defendant is not obliged to file an affidavit of defense; summary judgment cannot be taken for failure so to do as it can be in assumpsit; the only penalty is that unless one is filed (section 13) "the averments, in the statement, of the person by whom the act was committed, the agency or employment of such person, the ownership or possession of the vehicle, machinery, property or instrumentality involved, and all similar averments, if not denied, shall be taken to be admitted,......the averments of the other facts on which the plaintiff relies to establish liability, and averments relating to damages claimed, or their amount, need not be answered or denied, but shall be deemed to be put in issue in all cases unless expressly admitted." A release is a release of damages; "averments relating to damages claimed, or their amount, need not be answered or denied, but .

shall be deemed to be put in issue in all cases unless expressly admitted" are the words of the act. Nothing relating to damages or their amount could more convincingly raise an issue than a release, and, as the act puts the question of damages in issue without a denial, anything going to that question can be shown without pleading it. Section 16 of the act providing, "Neither party shall be permitted at the trial to make any defense which is not set forth in the affidavit of defense, or plaintiff's reply," does not apply to actions of trespass, as they are reserved out of the section: Ruth-Hastings Glass Tube Co. v. Slattery, 266 Pa. 288. In Wilson v. Adams Express Co., 72 Pa. Superior Ct. 384, which was an action of trespass to recover damages for injuries to a carload of horses, no affidavit of defense was filed. At the trial, defendant offered in evidence a contract, signed by plaintiff, in which the value of each horse was fixed at $200, by reason of which valuation plaintiff secured the minimum rate for transporation. It was objected that, no affidavit of defense having been filed, the defendant was precluded from making use of the contract as a defense. In disposing of this objection, the Superior Court, after calling attention to the fact that no affidavit of defense need be filed in actions of trespass, said, "It must follow therefore the statute contemplated that substantial defense along many lines might be properly heard in the trial of an action of trespass even where no affidavit had been filed......Its [the 13th section's] first clause mentions a number of facts frequently not the subject of any substantial contest where the averments of the declaration may with propriety be regarded as established facts, if not denied by an affidavit. The second clause of the section, however, we think declares in no doubtful terms that, notwithstanding the absence of an affidavit, the plaintiff must still carry the burden of proof of the facts necessary to establish the legal liability of the defendant and the amount thereof"; and held the contract admissible. Failure to file an affidavit of defense in the

present case did not preclude defendant from offering the release as a bar to plaintiff's recovery, and it is properly in the case.

It is undisputed by plaintiff that she signed the release, and that she received the consideration named in it, $1,100. It was procured in a way that, to say the least, may well be termed professionally unethical. Appellee's counsel recognizes, however, that he cannot overcome it for this reason; that, if the release is to be set aside, it must be because of fraud on the part of defendant or those acting in his behalf. It is not pretended that the defendant himself had anything to do with obtaining the release; plaintiff, a mature woman more than fifty years of age, was persuaded to execute it by one Magatagan, a stranger to her, described by himself as an "independent adjuster," who, to make a fee for himself, without communicating with plaintiff's attorneys, interviewed her, about three months after the accident, and, probably by some misrepresentation of facts, prevailed on her to go to the office of the casualty company whose policy protected defendant from loss in the suit. As the result of a conversation there had between her, Magatagan and a representative of the casualty company, and influenced, she says, by what had been said to her, she agreed to accept $1,100, signed the release, and a paper in which she said she came to the insurance company's office of her own free will to settle the claim against the defendant for the death of her husband. The money was paid to her by check, which she endorsed, and which recited that it was in full settlement against the defendant of all claims for the loss of her husband. This check was cashed at the bank on which it was drawn, Magatagan accompanying her to the bank. He was paid by the plaintiff, out of the sum received, $250 for his services in making the settlement, which amount he and plaintiff had agreed he should receive. He then accompanied her to a savings institution, where she opened an account with part of the money. She has never returned or of-

fered to return the sum thus received.  On the trial, her counsel made a tender of $1,100; admittedly this money was not hers.  In considering the circumstances connected with the settlement, we have given credence to plaintiff's version of them; there was contradiction of her testimony in most of its material phases by the other actors concerned in it.

The first question which arises as to the release is, whether plaintiff voluntarily executed it, knowing it was a release.  As to this, there is no difficulty, the testimony indicates she knew what she was doing, indeed she admitted she knew the money was paid to her for damages and that she thought the case was settled.  Concluding as we must under the evidence, that she knew the paper which she had voluntarily executed was a release, did her testimony justify setting it aside?

In the very recent case of Ralston v. Philadelphia Rapid Transit Co., 267 Pa. 257 (1920), the present Chief Justice reviewed the cases, bearing on the subject of releases of the character we are now considering; the rule laid down is thus summed up in the syllabus, "Where, in a negligence case, defendant sets up a release of damages executed by plaintiff, and the latter seeks to have the jury disregard it, and the essential facts in regard to its execution are in dispute, the burden is on plaintiff to prove the facts upon which he relies, *beyond a reasonable doubt, by evidence which is clear, precise and indubitable,* and by witnesses who are credible, who distinctly remember the facts to which they testify, and narrate the details exactly."

This is not the instance of a release executed immediately after the accident; here the paper was signed three months thereafter.  Plaintiff acted with deliberation, after more than one interview with Magatagan, who approached her on the subject.  As was pointed out in the Ralston Case, if her testimony is contradictory, or so vague and uncertain as to leave it doubtful in import, it cannot be clear, precise and indubitable.  At one point

in her examination, she answered both court and counsel
that she did not know the case was settled and later when
asked by the court "What did you think they were pay-
ing you the money for?" answered, "For damages."
When she received a letter from her attorneys sometime
after she had signed the release, she sent for Magatagan.
She testified, "I sent him word and asked him why it was
I was notified that the case would be coming up, because
I understood from him that the case was settled.   Q.
You understood it wa ssettled?  A. That Mr. Magatagan
would arrange that with Mr. Wilson and Mr. McAdams
about the case.  Q. And that as far as you were concerned,
the slate was clear and you were through with it?  A. Yes,
sir."  In view of this testimony, it is difficult to see how
she could thereafter, when the case was on trial, repudi-
ate the release.   That she knew she was making settle-
ment of the case, is shown by this inquiry, which she says
she addressed to Cook and Magatagan "I said 'Before I
can make settlement, don't I have to drop Wilson and
McAdams?' and they said 'No; when the case is called
in court, the case will be listed settled.'"  Her memory
was not reliable as to exactly what transpired at the time
of the meeting in the insurance office, as is shown by her
statement that she did not endorse the check until after
Mr. Cook had O.K.'d it, which assertion she contradicted
in answer to the next question.   As to the check, she at
first said she did not know what it was, then that she
only knew it was a check, and finally admitted she knew
it was a check for $1,100.   She did not inform her coun-
sel she had received the money, and, as before stated,
when they wrote her that the case was down for trial, she
considered the case settled.   There is confusion in her
recounting of what she says was told her she could re-
cover if she went on with the suit; in one instance, she
avers she was told the court would not allow her more
than $2,000, and again, that the statement made to her
was the court would not allow her anything.   That she
regarded the entire transaction as closed, is established

by her own statement, that she thought Magatagan would pay her attorneys. In the light of this analysis of her testimony, it could not be affirmed that plaintiff has met the burden, which, we said in the Ralston Case, she must carry, to prove the facts upon which she relies to nullify the release, "beyond a reasonable doubt, by evidence which is clear, precise and indubitable, and by witnesses who are credible, who distinctly remember the facts to which they testify, and narrate the details exactly." No consummated act, intended to be evidenced by a writing, could be relied upon, if the document, fixing its purpose and result, could be overturned by testimony of the character here appearing.

The judgment of the court below is reversed and is here entered for defendant non obstante veredicto.