## Stewart v. Pen Argyl National Bank.

*Practice, C. P.—Trespass—Set-off and counter-claim—Motion to strike off affidavit of defense—Act of May 23, 1923.*

1. No affidavit of defense is required where the action is trespass, except to meet the matters specifically set forth in section 13 of the Practice Act.

2. There is no such thing as set-off or counter-claim in an action of trespass.

3. Where an affidavit of defense was filed to an action in *assumpsit*, and the form of action was subsequently changed to trespass, a motion to strike off the affidavit of defense, made within fifteen days from the change of action, is sufficient under the provisions of the Act of May 23, 1923, P. L. 325.

Trespass. Rule to strike off affidavit of defense. C. P. Northampton Co., Dec. T., 1926, No. 20.

*Kirkpatrick, Maxwell & Chidsey,* for plaintiff.

*Kent & Rockwell,* for defendant.

STEWART, P. J., June 6, 1927.—This is a rule to show cause why the affidavit of defense, set-off and counter-claim filed in above action should not be stricken from the record. This rule was granted on Feb. 28, 1927. The case is somewhat peculiar in its facts. A summons in *assumpsit* was issued. We allowed the action to be amended, changing it to trespass, on Feb. 14, 1927, in an opinion reported in 20 Northamp. Co. Repr. 389. The affidavit of defense, set-off and counter-claim had been filed on Jan. 24, 1927, in pursuance of the usual notice in *assumpsit*, and the record shows that it was served on plaintiff's attorneys on Jan. 24, 1927. Thus the record shows that the present motion did not comply with the Act of May 23, 1923, P. L. 325. We held in Wimmer v. Kendall, 20 Northamp. Co. Repr. 220, that the act must be strictly followed. See, also, Blackwell v. Joseph, 7 D. & C. 790. What, therefore, is the present situation? Does the limit expire fifteen days after the date of service, Jan. 24, 1927, which would be Feb. 8, 1927. which was prior to the change of action, or was the motion made in time? We think the fifteen days' limit must be computed from the time the action was changed. When the action was *assumpsit*, an affidavit of defense was proper, but, as we hereinafter hold, when the action was trespass, an affidavit of defense was not necessary; hence, this motion is not made too late. An affidavit of defense

has never been required in actions of trespass. The Practice Act of May 14, 1915, P. L. 483, provides that certain averments of the statement, if not denied, shall be taken to be admitted on the trial, but it was never contended that a judgment could be taken for want of an affidavit of defense, or for want of a sufficient affidavit of defense. The opinion of Chief Justice Green, in Corry v. Pennsylvania R. R. Co., 194 Pa. 516, shows that: "Under the Act of May 25, 1887, P. L. 272, the legislature intended to confine the remedy by judgment for want of an affidavit of defense to actions *ex contractu* alone, as they were before the act was passed, and not to extend this remedy to actions *ex delicto*, or in their nature *ex delicto*." In Leonard v. Coleman, 273 Pa. 62, the syllabus is: "Under the Act of May 14, 1915, P. L. 483, defendant in an action of trespass is not obliged to file an affidavit of defense. If none is filed, the only penalty is that certain specified kinds of averments in the statement of claim shall be taken as admitted." In Smith v. Wertheimer et al., 76 Pa. Superior Ct. 210, the syllabus is: "The Municipal Court of Philadelphia may not by rule of court authorize the entry of judgment by default for want of a sufficient affidavit of defense in actions of trespass." It will thus be seen that the only purpose of an affidavit of defense in trespass is to exclude on the trial certain admissions in the statement. It would logically follow that an affidavit of defense in trespass ought only to contain the matters which are specifically set forth in section 13 of the Practice Act, *supra*, as follows: "In actions of trespass, the averments in the statement of the person by whom the act was committed, the agency or employment of such person, the ownership or possession of the vehicle, machinery, property or instrumentality involved, and all similar averments, if not denied, shall be taken to be admitted in accordance with section 6; the averments of the other facts on which the plaintiff relies to establish liability, and averments relating to damages claimed, or their amount, need not be answered or denied, but shall be deemed to be put in issue in all cases unless expressly admitted." When the present affidavit of defense is tested by that section, we find that its averments are utterly foreign to those averments. The first fifteen paragraphs are taken up with answers to the plaintiff's averments. Then follow eight paragraphs with various sub-sections, averring a set-off and counter-claim. There is no such thing as set-off or counter-claim in trespass: Quick v. Swanson, 1 D. & C. 608; Brown v. Syostek, 2 D. & C. 431; Ranck v. New Holland Borough, 5 D. & C. 4; Prentzel v. Snyder, 5 D. & C. 178, and Musser v. Watt & Shand, 6 D. & C. 230. The learned counsel for the defendant concede that the bank could not get a certificate for its claim in the present suit, but they state their position as follows: "We can use our set-off and counter-claim in order to extinguish the claim of the plaintiff, if he has any." They have cited Harper et al. v. Kean, 11 S. & R. 280; Shaw v. Badger, 12 S. & R. 275; Bayne v. Gaylord, 3 Watts, 301; Humphreys et al. v. Reed, 6 Wharton, 435; Price v. Lewis, 17 Pa. 51, and Lehr v. Taylor, 90 Pa. 381. We do not think those authorities sustain the position taken, at least not to the extent of allowing this affidavit of defense to remain a part of the record. It is true that there has been a decided change in the law with respect to counter-claims in actions of *assumpsit*. In the late case of Rohrbach v. Travelers Indemnity Co., 278 Pa. 74, the syllabus is: "Where money has been obtained by fraud, the injured party may waive the tort and recover the same in *assumpsit* for money had and received; and under the Act of May 14, 1915, P. L. 483, such claim can be interposed as a set-off in an action of *assumpsit*." On page 76, Mr. Justice Walling gives the cases which have been reversed by the decisions. In New York, Susquehanna & Western R. R. Co. v. Ruthven, 88 Pa. Superior

Ct. 501, Judge Trexler, in a very carefully reasoned opinion, shows some of the limitations of a set-off or counter-claim. The syllabus of the case is: "A failure by a railroad to accept cars, and the damages resulting therefrom, cannot be made the basis of a counter-claim in a suit by the carrier for freight charges on other shipments. In order to permit the set-off of a counter-claim, the claim on the one hand, and the counter-claim on the other, must arise out of the same transaction, and both in their nature must be ex contractu. Where the right of action is based upon the duty of the carrier to accept all shipments, the counter-claim arises under the contract of society and, not by reason of any engagement between the carrier and the shipper. While it is true that the duty to transport is owing to all men, because of the railroad's relation to the Commonwealth as a public carrier, yet the wrong done is its refusal to transport, and trespass is the proper action. Under such circumstances, the damages consequent from the refusal to accept the cars cannot be set off against the legitimate freight charges on a different shipment." It will be perceived that 'the ground of these decisions is based upon the phrastology of the Practice Act of 1915. However, the same act in no way extends the provisions as to set-off and counter-claim to trespass. In fact, as we have shown from the section quoted above, it excludes them. We do not think the provisions of the late Act of March 30, 1925, P. L. 84, throw any light on the present case. If the affidavit of defense remained on record, plaintiff might be troubled with the question whether the "new matter" needed to be replied to, and whether, if it were not replied to, he might not be in the position of admitting the truth of the "new matter." Any such contingencies should be avoided. In Reichard v. Insurance Co. of Penna., 8 D. & C. 275, decided April 16, 1926, President Judge Niles refused to strike off plaintiff's reply when he had filed it without any notice by the defendant to do so, on the ground that the alltgations of the affidavit of defense were not "new matter." He said: "Under the circumstances of these cases, we do not see that any right of defendants will be adversely affected by refusing their motions, nor that any good would be accomplished by striking off these replies. If the allegations of false swearing, &c., are not new matter, plaintiff, without filing any reply, could, of course, meet defendant's evidence with contradictory proof. If such allegations are new matter within the amendment's contemplation, plaintiff might be caught in a disagreeable dilemma at the trial had he failed to reply. We are not considering now the legal effect of the matters alleged in the pleadings. We do not feel impelled to expose the plaintiff to a possible peril by striking off his replies." In Oak Lane Country Day School v. Fidelity-Phœnix Fire Ins. Co., 8 D. & C. 35, and in Oak Lane Country Day School v. Virginia Fire and Marine Ins. Co., 8 D. & C. 194, both decided on the same day, Judge Williams decided that where a reply was not required, it should be stricken off the records, and shows just what could be properly considered "new matter." The three cases were in assumpsit, and while those opinions contained excellent discussions of the matters therein referred to, they do not apply to this case in trespass. It is unnecessary to pass on the question whether some of the matters referred to in the affidavit of defense would be receivable in evidence on the trial or not. All that we now decide is that the action having been changed to trespass, this affidavit of defense must be stricken from the record.

And now, June 6, 1927, rule to show cause why the affidavit of defense and set-off and counter-claim should not be stricken from the record is made absolute.

From Henry D. Maxwell, Easton, Pa.