## Vogel, Admr. et al., Appellants, v. Taub.

Argued May 22, 1934.  Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and LINN, JJ.

*Harry L. Siegel,* for appellants.

*F. W. Culbertson,* of *Culbertson & Stuckenrath,* for appellee.

OPINION BY MR. JUSTICE LINN, June 30, 1934:

Fay Vogel, a guest in an automobile driven by her brother-in-law, Joel Taub, was injured by his negligence, November 24, 1929.  She and her husband brought suit against Taub, October 14, 1931, to recover for the injury sustained.  After her death on June 27, 1932, her husband, who had been appointed administrator, was substituted as plaintiff as to her claim.

In bar of the action, Taub relied on two releases, one signed by Fay Vogel on December 12, 1929, and the other, by her and her husband, December 31, 1929.  Plaintiff replied that the releases were obtained by fraud, and that, as to the husband, there was no consideration

for the joint release. The court submitted the evidence to the jury who found verdicts for the plaintiff. Later, defendant's motions for judgment n. o. v. were granted, on the ground that the evidence offered to set aside the releases was not sufficient for the purpose. These appeals followed.

We start with the fact that the releases were executed and delivered with the intention of discharging Taub from liability. The settled rule is that to set aside such a release on the ground that it was obtained by fraud, the evidence must be, as was said in Ralston v. P. R. T. Co., 267 Pa. 257, 265, 268, 275, 110 A. 329, "clear, precise and indubitable." In Lindemann v. Pitts. Rys. Co., 251 Pa. 489, 492, 96 A. 1085, "indubitable proof" is defined as "evidence that is not only found to be credible, but of such weight and directness as to make out the facts alleged beyond a reasonable doubt." See also Leonard v. Coleman, 273 Pa. 62, 116 A. 550; Horsey v. Ciaroro, 280 Pa. 513, 124 A. 677; Keys v. Hanscom Bros., 288 Pa. 389, 135 A. 860. Application of that rule requires agreement with the conclusion reached by the learned court below.

Mrs. Vogel sustained injuries which, during the period when the release of the claims was under consideration, were not considered serious. Defendant, Taub, carried insurance. The insurer was represented by an adjuster, named Baturin, who obtained the releases. He mailed to Mrs. Vogel a blank form designed to elicit an account of the accident and injury; she returned it to him with the blanks filled in her writing. Opposite the printed words "Nature and extent of injuries" she had written "cuts & bru" [bruises?]. Opposite the "Name and Address of attending Doctor" was "Dr. Harry Fowler." Opposite the words "Amount for which you are making claim" she had written "One Hundred Dollars." On December 12, 1929, after Baturin had received this written report, he called on her and discussed settlement. He took from her a written statement of the ac-

cident and her condition; it was signed by her and witnessed by him. In this she said "We were all bruised and cut from glass breaking and other minor injuries. I was under the care of Dr. Harry Fowler of this city for a short time, and although I still have some pain in my back I am able to get around a bit. Fortunately I had no serious injuries such as fractures, lacerations, etc." She then executed the release of that date, in consideration of a draft for $15, which was collected.

After receiving this release (which apparently did not meet the requirements of the insurance company), a form of release in duplicate was mailed to the Vogels and, about ten days later (December 31, 1929), Baturin called on them. Baturin testified that he then informed Mr. Vogel that the paper he desired executed was "a complete release of all claims of Mr. Vogel and Mrs. Vogel against Joel Taub." Both husband and wife then executed this release in duplicate. It is in the same form as that executed December 12th, by Mrs. Vogel, except that it released the claims of both. So the matter stood until April 2, 1930, when plaintiff's attorney wrote defendant's insurer making further claims for Mrs. Vogel's injuries.*

We then have releases executed, as the letter states, when Mrs. Vogel "was apparently uninjured," which it is now proposed to set aside for fraud. What is the

---

* "I have been consulted by Mr. Daniel Vogel relative to the injuries which his wife sustained while a guest in the automobile of Joel Taub when his car upset. Mr. Vogel informs me that both he and his wife signed a release for the sum of $15 shortly after the accident, when Mrs. Vogel was apparently uninjured.

"As you, I believe, already know, it has since developed that Mrs. Vogel sustained an injury in that accident by reason of which she was compelled to undergo two operations and was confined to the hospital and by reason of which she may be compelled to undergo further considerable treatment.

"If you have not already done so, will you please take this matter up with your company, and advise me what their intentions in this matter are."

fraud suggested? Among the circumstances relied on to set aside the release of December 12th are the following: Baturin was a connection of the defendant by marriage. Plaintiff's daughter testified that, sometime between the date of the accident and the date of the first release, she heard the defendant, Taub, say to her mother " 'Don't worry, Arthur will take care of you.' Q. Did you know who was the Arthur referred to? A. Arthur Baturin." While Baturin testifies that Mrs. Newman, Fay Vogel's mother, was present during the whole interview of December 12th, when the release was obtained, she testified that she was not there during the interview, but arrived when her daughter was about to execute the release; she testified that: "He said to her, 'Now, you certainly wouldn't go against your brother-in-law.' She says, 'Not for the world,'...... . Q. What else did he say? A. He didn't say anything but he told her to sign and she signed. So he says, 'Being that you are a poor Jewish woman I will give you the sum of $15.' That is what I overheard, no more, he put on his hat and went out." Mrs. Newman then witnessed her daughter's signature to the release. While Baturin denies making these statements, we shall consider the case as though he had made them.

Baturin testified, in cross-examination, "If you are talking about figures, it is my recollection, Mr. Siegel [attorney for plaintiff], that she thought she was entitled to about $75 or $85 for her injuries." He also testified that she said that Dr. Fowler was her physician and had made two visits and that his bill was $4. The result of the discussion was that she agreed to take $15 in settlement; he produced a form of release and filled it out and also filled out a draft, which he delivered after she executed the release. Baturin admitted that he "told Mrs. Vogel she was not entitled to any considerable sum of money on the basis of a mere $4 medical bill, and the fact that her injuries were very trivial. Q. You told her her injuries were trivial? A. According to the medical

report of Dr. Fowler, exactly." This report we do not have; when defendant offered it in evidence, the plaintiff objected and the court sustained the objection.

As to the second release, Mr. Vogel testified that he told Baturin he "put one over on my wife," and that he "would sign on one condition, that if anything happens that he will take care of the wife"; that Baturin said, " 'All right, I will' "; "that the wife had signed, he had to have my signature as husband, that it wouldn't make any difference whether I signed or not, but he had to have both signatures." Baturin would not at first deny having made such a statement. On cross-examination, Vogel testified "he didn't say that [that it didn't matter whether he signed or not], he told me that it was a matter of having my signature with the Mrs., that it didn't matter just so we have both signatures on together"; that he (Vogel) didn't say (on direct examination) that Baturin said it didn't matter whether his signature was there or not; that Baturin wanted his signature "because he had my Mrs. signature, he had to have both signatures. Q. He told you that, you understood that? A. Yes, I understood that. Q. You and your wife had it [the form of release] in your possession about ten days? A. About ten days. ...... Q. Did you know the contents? A. Oh, I didn't read it, but I guess I knew what it was. Q. You knew that you and your wife were by that paper releasing Mr. Taub from the payment of any damages on account of an accident occurring on the highway between Centre Hall and Potters Mills, Pa., wherein Fay Vogel sustained both internal and external injuries? A. I knew she had signed, yes. Q. You knew when you were signing you were releasing Mr. Taub from the payment of any money, did you? A. At the time I signed, yes." Baturin testified "That the company in Philadelphia branch office asked that a corrected release be signed by both the husband as well as the wife, and those release forms in duplicate were already in the hands of Mr. and Mrs. Vogel, had been mailed out ten days before."

The alleged statement by Taub that "Arthur will take care of you" and Baturin's promise to Mr. Vogel to take care of Mrs. Vogel, are too indefinite to have any value as an enforceable agreement: Ogden v. Traction Co., 202 Pa. 480, 487, 52 A. 9; and do not constitute fraud: Humphrey v. Brown, 291 Pa. 53, 58, 139 A. 606. There is no evidence to show that Baturin had any knowledge, or even suspicion, that Mrs. Vogel's injuries were not trivial, when he took the releases; by that time she herself had seen a doctor only once or twice, and in her written report to the insurance company, had made claim for only $100. In those circumstances, we can see no support for the allegation of fraud in the statements that she "wouldn't go against her brother-in-law"; that Baturin was paying her $15 because she was poor, or in all of the statements, alleged to have been made, taken together. In December, 1929, Baturin was settling the claims, not only in the light of his own knowledge, but on the statement and belief of Mrs. Vogel that her injuries were not serious. The letter of plaintiff's attorney, quoted above, states that when the releases were executed "Mrs. Vogel was apparently uninjured." If the fatal character of her condition, as it developed subsequently, was unknown to her at the time, and to her and her husband on the 31st of December, 1929, Baturin cannot be blamed for not knowing it then. The evidence is not sufficient, within the rule, to support a finding that the releases were obtained by fraud.

In the appeal of the husband, an additional point is made to the effect that there was no consideration for the release in which he joined on December 31st. The contention is without merit, and is controlled by Real Estate Co. of Pitts. v. Rudolph, 301 Pa. 502, 153 A. 438. The release recites and contains an acknowledgment of the fact that $15 was paid for the claims of both of them and for the purpose for which they received it and to carry out the intention of all the parties.

In each appeal the judgment is affirmed.