## Brehm *v.* Brehm, Appellant.

Argued April 19, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*William T. Connor,* with him *John R. K. Scott* and *Hardie Scott,* for appellant.

*Francis T. Anderson,* for appellee.

OPINION BY MR. JUSTICE LINN, May 10, 1943:

Plaintiff filed his bill to cancel an instrument executed by him in October, 1940, and to obtain possession of the assets and business at that time conducted by him, trading as the Hygienic Sanitation Company, in Philadelphia. As ground for relief, he alleged that the ex-

ecution and delivery of the instrument were obtained by the fraud of the defendant; that he did not assign and transfer to her the assets of said business; that defendant had unlawfully taken possession, changed the locks on the establishment and had excluded plaintiff from the premises. In her answer, defendant denied the fraud and claimed absolute ownership of the property.

The case has been tried twice; first, in Common Pleas No. 2, and the second time, in Common Pleas No. 4. In each case the court in banc entered a decree, substantially as recommended by the chancellor, holding that the instrument under which defendant claims is ineffective; that she has no title to the property and business; that she must return it to the plaintiff and account for the period during which she excluded him.

While the record is large, we need only refer briefly to certain findings of fact which, fully supported by evidence, were affirmed by the court in banc and support the decree appealed from.[1]

Plaintiff established the business in 1926 under the name Hygienic Sanitation Company, registered pursuant to the Fictitious Names Act.[2] From 1930 to October, 1940, defendant, claiming to be the common-law wife of plaintiff, assisted in the business. In October, 1940, while plaintiff was on vacation at Cloverdale, New York, defendant went to him there and, in the words of the 4th finding of fact, ". . . told him that he was in danger of being prosecuted and arrested for failure to file income tax returns and to pay the tax; that she told him their attorney-at-law had advised that he sign an agreement transferring the business to her, when arrangements would be made for the filing of returns and the payment of taxes, after which the business would be

---

[1] The bill was dismissed by agreement as to defendant's two sons by a former marriage who had been named as defendants.

[2] 54 PS section 21 et seq.

transferred to him, . . ." The agreement, prepared for defendant in Philadelphia, was in these words:

## "PARTNERSHIP AGREEMENT

"It is agreed by George S. Brehm and Rachel Brehm that the Hygienic Sanitation Company which has previously been conveyed by George S. Brehm to Rachel Brehm, his wife, may be incorporated and Rachel Brehm is empowered to make all necessary transfers under the fictitious names act showing the change of ownership and to make the necessary arrangements for prompt incorporation of the business.

"In consideration of the transfer to Rachel Brehm of all right, title and interest in the business and assets, Rachel Brehm, agrees to assume full management and responsibility of the Hygienic Sanitation Company and to pay to George S. Brehm fifty per cent (50%) of the net profits of the said Company, not to exceed the sum of $100.00 per week."

The learned chancellor also found: "5. Plaintiff, having confidence in the defendant and fearing a possible arrest, signed the agreement in duplicate and delivered them to defendant on October 4, 1940." Defendant did not sign the paper until after her return to Philadelphia.

When plaintiff returned from his vacation, later in October, he ". . . found new locks and an iron door installed at his office and he was prevented from conducting his business and taking part in its management.

The following facts were also found:

"9. Said business was then conducted by the defendant, and on October 16, 1940, she registered the business in her name under the Fictitious Names Act, . . ."

"10. Plaintiff, believing that the matter of the taxes had been adjusted, requested the return of the business to him, but this was refused by defendant.

"11. Defendant knew there was no need to transfer the business to her to avoid possible imprisonment, and

that the representations made by her were for the purpose of procuring the signature of plaintiff to the agreement, and were for the purpose of putting him in fear and placing him under duress in order that she might defraud him of his business."

"13. The agreement of October 4, 1940, is not a valid and binding agreement, as it was obtained by false and fraudulent representations made by defendant."

Appellant stands on the agreement alone and in the brief contends that by the "Partnership Agreement" ". . . she is entitled to be declared the owner of the business . . ."

We agree with both of the courts who have considered the instrument, that it is too vague and uncertain to be susceptible of sensible construction by the application of accepted rules: *Seiss* v. *McClintic-Marshall Corp.,* 324 Pa. 201, 204, 188 A. 109. Though entitled "Partnership Agreement," defendant repudiates all idea of partnership and claims sole ownership. While she had inserted in the paper a recital that the company "has previously been conveyed" to her by plaintiff, she testified that it had not been "previously conveyed," and in an affidavit filed with the federal government, deposed that the business was transferred to her in October, 1940. If, as she contends, the instrument gave her title, why should she be "empowered to make all necessary transfers" and to arrange "for prompt incorporation?" If the property was hers, why should she agree "to assume full management and responsibility" when she could do as she pleased with it? If she thought plaintiff intended to transfer the property to her, why did she consider it necessary to change the locks and otherwise prepare to exclude him when he should return from his vacation?

There was ample evidence to support the conclusion that a confidential relationship existed, a conclusion not challenged in appellant's argument, and that plaintiff's signature was obtained by fraud. Defendant knew when she went to New York and induced him to sign the paper,

that no proceedings had been begun or threatened for income tax delinquency. She testified, "Q. Is it a fact that prior to October 4, 1940, no representative of the government of the United States had any conversation with you with respect to Mr. Brehm's liability for payment of income tax? A. No, I never discussed it with anyone." The evidence which establishes the fraud necessarily negatives any possible contention that plaintiff intended to make a gift.

Appellant contends that the testimony was not clear, precise and indubitable; the evidence of defendant's fraud in obtaining plaintiff's signature is convincing beyond reasonable doubt. Cf. *Vogel* v. *Taub,* 316 Pa. 41, 43, 173 A. 270, and cases there cited.

The appellant also contends that plaintiff's delay bars relief. Though the bill was not filed until January 27, 1942, the court below found that the delay had been adequately explained. As soon as plaintiff returned from his vacation he attempted to take charge of his business, but was excluded by the defendant and her agents. Efforts to adjust their difficulties followed and were carried on for a considerable time. Finally, November 15, 1941, plaintiff's counsel wrote to defendant's counsel calling attention to the failure to reach a settlement and saying ". . . that unless a meeting [of clients and counsel] can be arranged without delay I will be compelled to institute a suit." In reply, counsel for defendant on November 18th suggested a meeting of counsel only. The learned chancellor concluded that plaintiff had acted with reasonable diligence. In *Ringer* v. *Finfrock,* 340 Pa. Pa. 458, 464, 17 A. 2d 348, it was said, "The question of laches is disposed of by the conclusion of the court below that appellant has not been prejudiced by the delay in instituting these proceedings, and that the bill was filed with reasonable promptness . . ." See also *First National Bank of Pittston* v. *Lytle Coal Co.,* 332 Pa. 394, 396, 3 A. 2d 350; Restatement, Restitution, section 148, comment (a).

Decree affirmed, costs to be paid by appellant.