# Miller's Estate.

*Practice, orphans' court—Findings of fact—Auditing judge—Court in banc—Evidence—Setting aside findings.*

1. The findings of an auditing judge who saw and heard the evidence, while entitled to great weight, are not conclusive on the court in banc.

2. Such findings are not entitled to more weight with the court in banc than is the verdict of a jury on motion for new trial, and where the findings are so manifestly against the evidence as to

require a new trial, if found by a jury, they should be set aside by the court in banc.

3. On appeal the appellate court will not set aside the findings of the court in banc except in case of plain error.

*Evidence—Release of interest in estate—Character of proof to set aside release—Clear, precise and indubitable.*

4. To set aside a release of an interest in an estate the evidence must be clear, precise and indubitable.

5. When the terms clear, precise and indubitable are used in defining the requisite proof of a particular fact to be made out by oral testimony, it is meant that it shall be found that the witnesses are credible, that they distinctly remember the facts to which they testify, that they narrate the details exactly, and that their statements are true.

*Accord and satisfaction — Payment of part — Compromise of doubtful claim—Payment of part of claim by a third party.*

6. The rule that payment of part of a liquidated indebtedness presently due will not discharge the whole, does not apply to the compromise of a doubtful claim, or at least one which the parties consider so.

7. Payment of a sum less than the full amount by a third party will, when so understood, satisfy the claim.

Argued October 12, 1923.   Appeal, No. 48, Oct. T., 1923, by Rebecca J. Miller, legatee, from decree of O. C. Allegheny Co., Oct. T., 1921, No. 287, dismissing exceptions to adjudication, in Estate of William J. Miller, deceased.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SADLER and SCHAFFER, JJ.   Affirmed.

Exceptions to adjudication of MILLER, P. J.

The opinion of the Supreme Court states the facts.

Exceptions sustained by court in banc in opinion by TRIMBLE, J.

Rebecca J. Miller, a legatee, appealed.

*Error assigned* was, inter alia, decree, quoting record.

*James F. McNaul,* with him *Charles D. Evans,* for appellant.—The findings of fact on testimony of petitioner was proper: Fischer's Est., 189 Pa. 179; Sulkin v. Gil-

bert, 218 Pa. 255; Markee v. Phila., 270 Pa. 337; Sargeant v. Ins. Co., 189 Pa. 341; Penn Furniture Co. v. Ins. Co., 47 Pa. Superior Ct. 77; Weiskircher v. Connelly, 256 Pa. 387; G. B. Hurt, Inc., v. Canneries Co., 263 Pa. 238; Sullivan v. R. R., 272 Pa. 429; Kunkel v. Kunkel, 267 Pa. 163; International Fabrication Corp. v. Machine Co., 269 Pa. 541; Morrett v. Fire Association, 265 Pa. 9.

*Geo. B. Berger,* for appellee.—Where it is doubtful whether or not a pecuniary legacy is a charge on real estate, a release of the lien of the legacy, for a valuable consideration, cannot be avoided, in the absence of anything inequitable.

OPINION BY MR. JUSTICE WALLING, January 7, 1924:

William J. Miller, of Pittsburgh, died March 7, 1919, having in 1908 made his last will as follows: "Pittsburgh, Pa. Being in sound mind I William J. Miller, hereby bequest all my personal and real estate including the money held in bank also all mortgages belonging to me, to my dear wife. To my mother Rebecca J. Miller of Ravenna, Ohio, I bequest her ten thousand dollars. $10,000 to mother. William J. Miller." Testator's widow, Hanna Miller, became administratrix c. t. a. of his estate, and as such filed a final account, the audit of which, made in October, 1920, showed a balance of personal estate for distribution amounting to $2,873.63; this sum came from money in bank and was then awarded to the widow as a specific legacy, under the terms of the will, leaving no personal estate to apply on the mother's $10,000 bequest. Testator left unencumbered real estate of much greater value than the $10,000, and in October, 1921, testator's mother, Rebecca J. Miller (herein called the petitioner), presented her petition to the orphans' court averring that her legacy was a charge upon testator's real estate and praying that it be so decreed and an order made for its payment,

etc.  An answer, duly filed by Minnie Milligan, executrix of the estate of Hanna Miller, deceased (the latter having died November 8, 1920), denied that petitioner's legacy was a charge upon the land or collectable therefrom.  The answer also averred that petitioner had, for a valuable consideration and as the result of a settlement released and discharged the William J. Miller estate in full from all claims on account of the legacy. Of the personal estate decreed to the widow, there was on deposit in a certain bank the sum of $2,101.60 (herein referred to as $2,100), which, as a matter of compromise, while denying liability, she offered to turn over to petitioner in full satisfaction of the $10,000 legacy.  This petitioner agreed to accept and executed a release as follows: "Pittsburgh, Pa., October .., 1920.  I hereby acknowledge receipt of $2101.60 from Mrs. Hanna Miller in full settlement of the bequest of $10,000 made to me in the will of William J. Miller, and I release the said Hanna Miller from all claim or claims of any kind whatsoever.                          Rebecca Miller.

"Witness Margaret Stotz."

The transfer of the bank account was delayed by lack of proper certificates to satisfy the bank and then by Hanna Miller's death.  But in the spring of 1921 the same offer of compromise was renewed on behalf of the Hanna Miller estate and in furtherance of which petitioner came from her home in Ohio to Pittsburgh, where a meeting was held in the office of the attorney of the last named estate, at which the petitioner and her counsel were present.  The latter advised his client not to accept the $2,100 in discharge of her legacy, as he thought it was a charge upon the real estate, while counsel for the Hanna Miller estate adhered to his previously expressed opinion that it was not.  The petitioner, despite the advice of her counsel, decided to go on with the settlement and there executed a more formal release as follows: "I, Rebecca Miller, acknowl-

edge the receipt of the legacy due me under the will of William J. Miller, recorded in the Register's office of Allegheny County in Will Book volume 154, page 537, and for value received I hereby release the said estate from all claim or claims which I might have arising out of said legacy. Witness my hand and seal this 15th day of March, 1921.                    Rebecca Miller (seal).

"Witness: J. L. Trefallen, Jr."

To protect the title of purchasers of parts of the William J. Miller real estate, this release was acknowledged and recorded. In addition to the $2,100, petitioner's attorneys in Pennsylvania and Ohio were paid $400; she also received a $500 legacy bequeathed to her by Hanna Miller, all of which was paid by the latter's estate. In 1922, the matter of charging the legacy upon the land was heard by the auditing judge, on petition, answer, replication and testimony, and he at first decreed a dismissal of the petition, holding the land not liable for the legacy. Exceptions thereto were sustained by the court in banc who held, in an opinion written by the auditing judge, that the land was charged with the legacy. He also held the releases executed by the petitioner invalid and further that she was entitled to the relief prayed for. Upon exceptions thereto the case was heard by the court in banc, consisting of three judges, and the two, who were not present at the hearing, joined in an opinion reversing the auditing judge (who dissented) and dismissing the petition; from which the petitioner, who has since died, brought this appeal.

A careful examination of this case leads us to the conclusion that it should be affirmed. The execution of the release is admitted and the mental competency of petitioner is unchallenged. The suggestion that she was unacquainted with the contents of the releases, especially the one executed in March, 1921, on which appellee relies, is not sustained by petitioner's own testimony and is disproved by that of numerous witnesses.

The gravamen of her complaint, however, is that she was induced to execute the releases because of the false statements made to her by Hanna Miller. For proof thereof, petitioner relies upon her own testimony, which was objected to because of the death of Hanna Miller; but, assuming its competency, it was insufficient. The effect of such testimony is that Hanna told petitioner the judge had said her legacy was uncollectable, and further that she (Hanna) would give petitioner the $2,100 in bank although not obliged to do so. What the judge in fact said and decided was that the balance of the personal estate, having been specifically devised to Hanna, as money held in bank, could not be applied on petitioner's legacy. Nothing was then said by the judge, or by Hanna to petitioner, about the real estate. Hanna could not be expected to say the legacy was a charge on the land when her counsel held it was not. It is sought to corroborate petitioner's testimony by that of her sister to the effect that Hanna made a somewhat similar statement to her, but not in petitioner's presence; so the latter's evidence stands alone as to what Hanna told her. Aside from the grave danger of setting aside a solemn written instrument on the evidence of what a surviving party thereto says she was told by one now dead, the evidence fails to disclose either fraud or intentional misrepresentation. After Hanna's death, a Mr. and Mrs. Schmidt (the latter being her sister) took an interest in petitioner and corresponded with her, and Mr. Schmidt went to Ohio and brought her back with him in March, 1921, just before the settlement was consummated, and with a view thereto; advising her, as she testifies, to accept the $2,100 and saying, as she further testifies: "That is all the money I could get, because if it went from one court to another, by and by, I would get nothing." Petitioner made her home with the Schmidts while waiting for the final settlement and there made a will in which Mr. Schmidt was named as residuary legatee. There is nothing, however, to support a finding

that he was guilty of fraud or that his advice, if as stated, was not honestly given.

Appellant was residing with her daughter-in-law, Hanna, who was administratrix of the William J. Miller estate, when the settlement was first discussed and agreed upon in October, 1920, and it is urged that a confidential relation existed between them; even so, that relation ended with Hanna's death, while the final release wes executed over four months thereafter. There is not enough to justify the conclusion that a confidential relation existed between petitioner and the Schmidts; she was not related to them and they had no legal control over her or her property, and there is no pretense that she was feeble minded, while her own testimony shows she was not. Even if there was a confidential relation, the affirmative evidence clearly shows petitioner fully understood the terms of the settlement and agreed thereto. Petitioner was at her home in Ohio from October, 1920, to March, 1921, with a full opportunity to consult her counsel, for she had a lawyer there as well as in this State, and the final settlement was consummated after she had ample time and opportunity for consultation and deliberation; in which respect the case differs from those cited in her behalf. Petitioner was in her seventy-ninth year when she executed the release and was hard of hearing but certainly understood what took place at the final settlement, and, if, as she claims, she did not grasp what her lawyer there stated, she should have asked him to repeat it. Moreover, the evidence of six other witnesses, including two members of the bar in good standing, who were present, is to the effect that petitioner did understand what was said there in the office. The fact that she gave oral testimony at length in answer to questions, and in a straightforward manner at the hearing, negatives the claim of her inability to hear.

The findings of an auditing judge, who saw and heard the witnesses, while entitled to great weight, are not

conclusive upon the court in banc; if they were it would be idle to have a hearing upon exceptions to such findings before that court. As stated by Mr. Justice KEP-HART in Thompson's App., 271 Pa. 225, 229: "The court in banc has the unrestricted right to consider the evidence in all aspects, and as bearing on the case as originally developed." And further: "It is in the power of a court in banc to review the findings of the trial judge, though they [the other members of the court] may not have participated in them, and fix different assessments and percentages." In any event, the findings of an auditing judge are not entitled to more weight with the court in banc than is the verdict of a jury on motion for new trial (see Wm. Drinkhouse's Est., 151 Pa. 294), and where the findings are so manifestly against the evidence as to require a new trial, if found by a jury, they should be set aside by the court in banc. Therefore, the decision here appealed from is right, for, considering the entire evidence, a verdict setting aside the release in question could not be sustained. When a case reaches an appellate court, added weight is given to the findings of an auditing judge or master, approved by the court in banc, as it is to the verdict of a jury approved by the trial court. Even then the findings are not conclusive, for, in the language of Mr. Justice TRUNKEY, speaking for the court in Worrall's App., 110 Pa. 349, 362: "In a suit in equity [and the orphans' court is a court of equity] the finding of a master is not conclusive, as is the verdict of a jury in a trial at law. Upon exceptions to the master's findings of fact, the court of original jurisdiction is bound to examine the evidence and determine what are the facts. Whether that court agrees or disagrees with the master's findings on appeal, the appellate court shall in like manner determine if the facts have been rightly found. When the appellate court is satisfied that the facts have been found without proof, or material facts established by the proofs have not been found, it follows that there has been plain mistake. In

the several stages of the proceeding there is no place for a perfunctory consideration of the evidence relative to facts in dispute": reaffirmed in McConville v. Ingham et al., 268 Pa. 508. This is consonant with the rule that an appellate court will not set aside such findings except in case of plain error: Sullivan v. Hess, 241 Pa. 407, 411; Shimer v. Aldine Trust Co., 264 Pa. 444; Altaffer v. Anderson Auto Co., 77 Pa. Superior Ct. 63; Kern's Est., 18 Pa. Superior Ct. 506. The rule last cited does not apply where the findings are only inferences or deductions from other facts or conclusions from reasoning: Gongaware's Est., 265 Pa. 512.

It is a familiar rule that, to set aside a release like the one in question, the evidence must be clear, precise and indubitable. The meaning of these words is fully explained and the authorities supporting the rule cited in the opinion by the present Chief Justice in Ralston et ux. v. Phila. R. T. Co., 267 Pa. 257, and need not be here repeated. The opinion writer there quotes with approval the language of Judge RICE in Baranski v. Wilmsen, 56 Pa. Superior Ct. 153, that, "When the terms clear, precise and indubitable are used, in defining the requisite proof of a particular fact to be made out by oral testimony, it is meant that it shall be found that the witnesses are credible, that they distinctly remember the facts to which they testify, that they narrate the details exactly, and that their statements are true." This is reaffirmed in Leonard v. Coleman, 273 Pa. 62, also in Morneweck v. Western & S. L. Ins. Co., 271 Pa. 17. Whether the evidence in such case meets the required standard that justifies its submission to a jury is a question of law. In harmony with this principle the court in banc, in the instant case, held the evidence insufficient to support the findings of the auditing judge.

Appellant calls attention to the rule that payment of a part of a liquidated indebtedness, presently due, will not discharge the whole. The rule is sound but inapplicable here, for this was the compromise of a doubtful

claim, or at least one which the parties considered so; hence it was a proper matter for compromise. If the appellant's legacy was not a charge upon the land she could recover nothing, and that was a mooted question, as appears by the different views of the lawyers and judges to which we have referred. Admittedly, prior to the Wills Act of June 7, 1917, P. L. 403, it would not be such charge; whether changed by that act (see sections 17 and 26), as to wills theretofore made, had not at the time of this settlement been decided by any court, nor yet, so far as we recall, by an appellate court. Hence, as the settlement of a doubtful question, it was a proper subject of compromise: Laughead v. Frick Coke Co., 209 Pa. 368; Washington N. Gas Co. v. Johnson et al., 123 Pa. 576; Brockley v. Brockley, 122 Pa. 1; 1 R. C. L., p. 194, section 30; and see Riegel v. Insurance Co., 140 Pa. 193.

Fischer's Est., 189 Pa. 179, relied upon by appellant, lacked the feature of the compromise of a doubtful claim and the release there was executed under a threat of violence. In Miskey's App., 107 Pa. 611, also relied upon, the deed was executed without the knowledge or consent of the grantor's attorney. These cases also differ from the present in other respects. Furthermore, the $2,100 was paid by the Hanna Miller estate and not by that of William J. Miller, and it is well settled that the payment of a sum less than the full amount by a third party will, when so understood, satisfy the claim: Fowler v. Smith, 153 Pa. 639, 645. If it is suggested that the Hanna Miller estate and that of William J. Miller was, in effect, one, then Rebecca J. Miller was clearly an incompetent witness as to matters occurring in the lifetime of Hanna Miller.

As to the effect of appellant's failure to tender or return what she received in the settlement, we express no opinion.

The decree is affirmed at the costs of appellant's estate.