Berardini, Appellant, *v.* Kay et al.

Argued January 6, 1937. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■

*John E. Evans, Sr.,* of *Margiotti, Pugliese, Evans & Buckley,* with him *Frank J. Lagorio,* for appellant.

*William R. Scott,* of *Smith, Buchanan, Scott & Inger-soll,* with him *Donald Thompson* and *Elmer E. Myers, Jr.,* for appellees.

OPINION BY MR. JUSTICE MAXEY, June 25, 1937:

Appellant was plaintiff below in an action of deceit. His statement of claim averred in substance that, as a result of false representations by an employee of defendants, a firm of stockbrokers, the margin account which he carried with the firm was charged with a short sale of stock. Defendants subsequently purchased, at an advance in price, sufficient shares to cover the short sale, resulting in a net loss to appellant's account of $4,208.

At the trial appellant's proof showed the following: He is a citizen of foreign birth, unable to speak English fluently but reading it without difficulty. At the time of the transaction complained of, and for many years previously, he was the treasurer of a private bank which did business mainly with customers of Italian birth or lineage in Pittsburgh. He formerly carried a margin account with another firm, in which he traded heavily on the market. He was thoroughly acquainted with stockbrokers' methods of doing business. In March, 1928, on the advice of three friends, who were defendants' customers, he visited defendants' place of business for the purpose of opening an account. He was introduced to Parker, a partner of the defendant firm, and to defendants' margin clerk, a man named Bergman. Appellant testified that Parker instructed him to deal through Bergman, saying that whatever Bergman said or did would be satisfactory to the firm. Thereafter appellant dealt through Bergman exclusively. Trading in

his account was extensive during the ensuing year, in both long and short sales. Appellant frequently visited defendants' board room with his friends, where they watched the fluctuations of the market and through Bergman directed purchases and sales for their accounts.

At the time when the account was opened appellant signed the usual form letter addressed to the firm, whereby he agreed that the securities carried in his account, as margin to secure the same, might be pledged, borrowed or loaned by defendants without notice; that contracts on his behalf might be settled according to stock exchange and clearing house rules; that statements of the account rendered appellant should be considered correct unless appellant gave defendants written notice of objection within fifteen days after receipt; and that, if appellant's account should fail to be properly margined, defendants should have "authority to protect [their] interests whenever, in [their] judgment, it may be necessary."

According to appellant's testimony and that of his two associates present at the time, on January 19, 1929, Bergman approached appellant in the board room and asked him if he would do a favor for the firm and permit them to use his name for a few days to correct an error in the books. One of appellant's friends repeated the request in the Italian language for appellant's better understanding, whereupon Bergman stated that appellant would not be held responsible for complying with the request, and appellant then assented. A few minutes later Bergman returned holding a paper in his hand, which he asked appellant to sign. Appellant drew aside to a writing stand a few feet away and signed it without reading it. Nothing in the evidence tended to show that Bergman prevented, or attempted to prevent, appellant from reading the paper.

This paper was offered in evidence, and appellant admitted that he signed it. It was an order in the form of

a letter addressed to defendants, directing the transfer of a short sale of stock from another account to appellant's, in the following terms: "Please transfer to my account 200 shares steel sold at 167½ amount of $33,442 from account of J. B. Monticello, and oblige, Yours very truly, [signed] Joseph Berardini. I hereby accept the above transfer, Yours very truly, [signed] J. B. Monticello."

Bergman's statement that there was an error in the books of the defendant firm and that the firm desired appellant to do it a favor was false. The reason Bergman desired appellant to authorize the transfer was the fact that Bergman, unknown to defendants and to appellant, had been surreptitiously carrying on the books of the firm a margin account in the name of Monticello, in which Bergman and another of defendants' employees each had a one-third interest. Bergman knew that this was contrary to the rules of the stock exchange and of the defendant firm. The Monticello account was undermargined and Bergman feared that his employers would discover this, that his unlawful interest in that account would be revealed, and that as a consequence he would lose his job. Obviously this was what induced Bergman's misrepresentation.

Appellant did not subsequently inquire into the transaction, to see whether the transfer had been erased from his account, though his understanding had been that his name was to be used by the firm for only a few days, nor did he ever voice any objection. This he explained by saying that statements of his account for the months of January and February, 1929, upon which the transfer would appear, were never received by him from defendants, although except on one occasion he had regularly received statements in the past. There was also evidence clearly demonstrating that appellant was familiar with transactions of the character in question. On two previous occasions he had signed orders transferring items from his account to that of his friends and vice versa.

It appeared that Bergman's duties included that of ascertaining whether the firm's customers' accounts contained sufficient margin to protect the firm against their indebtedness. This he failed to do, in the case of the accounts of appellant and his friends. On March 9, 1929, this situation was discovered by defendants. Bergman was promptly discharged and a call for additional margin was made on appellant. He denied responsibility for the short sale of steel stock transferred to his account in January. Subsequently defendants purchased at a higher price sufficient shares to cover the short sale, and charged the difference in cost to appellant's account when it was finally sold out in full, the balance of stocks and cash in the account being returned to him.

Suit in trespass was brought in May, 1929, but thereafter appellant amended his statement of claim three times, and the case was not tried until January, 1935. At the trial appellant's account of what passed between him and Bergman when the latter requested him to sign the transfer was contradicted by Bergman, testifying for defendants. Bergman's version of the transaction was that he explained in full to appellant the shortage of margin in the Monticello account and that this was the reason why he desired appellant to accept the transfer; that appellant thought the matter over for a day, finally consented, and signed the transfer with no one besides Bergman present.

After a verdict for appellant, defendants' motion for judgment n. o. v. was granted by the court below and judgment was entered for defendants. The court held that appellant's case was an attempt to vary by parol a written contract on the ground that he was induced by fraud to undertake the obligation; that the measure of proof required in such cases is evidence which is clear, precise and indubitable, and sufficient to justify a chancellor sitting in a court of equity in reforming the instrument; and that appellant's proof did not meet this required standard. Appellant now contends that this standard was met by the case which he presented.

Appellant's alleged failure to read the transfer order when he signed it is of no materiality. A written contractual obligation may not be nullified because a party who signs it recklessly, and in complete disregard of his own interests and the rights of others, refuses to take the common precaution of reading what is plainly written on the instrument before him. Appellant's obligation thereon is not thereby lessened: *Rinker v. Ætna Life Ins. Co.*, 214 Pa. 608, 64 A. 82; *McCready's Est.*, 316 Pa. 246, 255, 175 A. 554; *Bosler v. Sun Oil Co. et al.*, 325 Pa. 411, 190 A. 718. The legal effect of the agreement is not affected by appellant's not having read it.

The question for us to decide is whether plaintiff's evidence was so prima facie persuasive as to be entitled to submission to the jury. In considering this question, it must be borne in mind that the order transferring the stock from Monticello's account had the effect of placing that stock in appellant's account as though he had originally purchased it and made it subject to the same control by the defendants, under certain circumstances, as the securities which he himself purchased, the nature of which control was set forth in the "form letter" which appellant signed and sent to the defendant when he opened his account. This court said in *Ralston et ux. v. P. R. T. Co.*, 267 Pa. 257, 110 A. 329: "Whether the evidence is true is a question of fact, . . . but whether it meets the required standard which justifies its submission to the jury (to pass upon its truth) is always a question of law." In *Foley, Exr., v. Wasserman et al.*, 319 Pa. 420, 179 A. 595, plaintiff's decedent, Foley, was a friend of Edward McGrath, an employee of another brokerage house. McGrath persuaded Foley to transfer his account to the defendant's in order to assist McGrath in getting a job with them. Foley did so and placed his orders to buy and sell with McGrath. On January 21, 1929, Foley signed an instrument guaranteeing to the defendants the personal account of McGrath which McGrath carried in the name of his son Joseph. A loss

ensued and was charged to Foley's account. Foley testified that he could neither read nor write, except his own name and that McGrath had led him to believe that he was signing only a guaranty of McGrath's purchase of 100 shares of Sinclair Oil Stock. The guaranty he actually signed was a general guaranty. This court held that the evidence of the alleged misrepresentation was not "so clear, direct, weighty and convincing" as to lead to "a clear conviction, without hesitancy of the truth of the facts in issue."

In the instant case, plaintiff's testimony is equally unconvincing and inadequate. It is inherently improbable that Bergman, a margin clerk receiving a small salary, was invested with the authority of a partner. Both the partnership, speaking through Mr. Parker, and Bergman himself deny that any such authority was ever given the latter. It is inherently improbable that the appellant would believe that the appellees, described by appellant as "a large brokerage firm," would ask him, Berardini, for "the use of his name, for a few days to correct an error in the books" and it is equally improbable that the appellant would comply with any such request if made. It was testified by appellant's friend, Mazzolini that when the appellant gave his consent to the use of his name, he restricted its loan to "only for a few days," yet it is in evidence that the appellant never afterwards inquired whether the "loan" had been terminated. The paper which the appellant signed was brief and unambiguous and in itself "gave the lie" to Bergman's alleged "misrepresentations." The inference is inescapable that there were no such misrepresentations made as appellant now pleads and attempts to prove as a basis of recovery. In *Thompson, Receiver, v. Schoch*, 254 Pa. 585, 99 A. 72, this court said: "The evidence relied upon [to sustain a defense to a suit based on a writing] taken as a whole, must be so persuasive in character, so free from self-contradiction, or material internal variances, and so intrinsically probable, that the

judicial mind can rest thereon with a conviction that the ends of justice would be served by giving it effect as the basis of a decree reforming the writing in suit." The "testimony must be clear, precise and indubitable before it can be permitted to overcome the documentary proof to which it is opposed; and, in cases of this kind, . . . a court should never permit a jury to do what it would not sanction if sitting as a chancellor." Evidence measuring up to the standard of indubitability must possess a more persuasive quality than the evidence offered by the plaintiff below. Webster's New International Dictionary defines indubitable as "too evident for doubt." In *Gianni v. Russell & Co.,* 281 Pa. 320, 323, 126 A. 791, this court stated the law to be as follows: "The writing must be the entire contract between the parties if parol evidence is to be excluded and to determine whether it is or not the writing will be looked at and if it appears to be a contract complete within itself 'couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing': *Seitz v. Brewers' Refrigerating Machine Co.,* 141 U. S. 510, 517." Wigmore on Evidence, 2nd ed., sec. 2431, quotes with approval the following from *Towner v. Lucas, Exr.,* 13 Gratt. (Va.) 705: "For reasons founded in wisdom and to prevent frauds and perjuries, the rules of the common law exclude such oral testimony of the alleged agreement; and as it cannot be proved by legal evidence, the agreement itself in legal contemplation, cannot be regarded as existing in fact." In Wigmore's 1934 "Supplement" to Wigmore on Evidence, there appears this statement under section 2431: "But this original form of the rule in Pennsylvania [referring to the rule laid down in *Phillips v. Meily,* 106 Pa. 536, 543] has now been abandoned for a form more nearly harmonizing with the orthodox rule." He then cites *Gianni*

*v. Russell & Co.,* 281 Pa. 320, 126 A. 791, supra; *First National Bank v. Sagerson,* 283 Pa. 406, 129 A. 333, and *Russell v. Sickles,* 306 Pa. 586, 160 A. 610.

Various elements in appellant's case detract from the persuasiveness of his evidence to sustain the charge of fraud. One is his insistence upon the fact that when he signed the order he failed to read it. It was only three or four lines long. It was the kind of instrument with which appellant was familiar, having previously signed two similar orders, almost identical in terms, a few months before. A glance at the document would have disclosed its contents and its meaning. Defendants' clerk did not seek to conceal it. Appellant had been a market trader since early in 1925. All the evidence tended to show that he knew what he was about in conducting a brokerage account. He admitted he never signed any other instrument without reading and knowing its contents. Appellant was on familiar terms with no one connected with the defendant firm except Bergman, defendants' faithless clerk, having previously met Parker, a partner, only once, when he opened his account. It would have been most irregular for the firm to request such a favor, and this must have been apparent to appellant. Neither at the time of signing the transfer order nor later did he make any inquiry as to why the firm desired to be accommodated, what the error in the books was, or how his signature could correct it. He stated that he regularly received statements of his account from defendants at the close of each month, except once during 1928, which he could not recall, yet he claims he did not receive those for January and February, 1929, the only two which would have disclosed the item in question in his account.

The evidence offered by appellant is equivocal when to it is applied the test of reasonableness, and the facts that he deemed it advisable to file three separate statements and again at the trial amended his last statement, thus altering the dates and modifying the circumstances

of the alleged fraud, suggests the nebulosity of his own conception of his claim.

We agree with the court below in its statement: "To us, plaintiff's testimony was not persuasive in character, was not free from material internal variances, and was not so intrinsically probable as to warrant a court, sitting as a chancellor, in reforming the instrument [directing the transfer of a short sale of stock from another account to appellant's]."

The question of the propriety of an action in trespass, instead of assumpsit, to obtain the desired relief, was not considered in the court below and has not been argued.

The court below did not err in entering judgment n. o. v. for defendants.

The judgment is affirmed.