## Davis, Appellant, v. Carbon County.

324

Argued November 21, 1951. Before DREW, C. J.,
STERN, STEARNE, LADNER and CHIDSEY, JJ.

*Ben R. Jones, Jr.,* with him *Donald L. McCay* and *J. Thirwall Griffith,* for appellants.

*Everett Kent,* Special Counsel, with him *George Kerestes,* County Solicitor of Carbon County, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 7, 1952:

John P. Davis, Stephen Pancoe and Homer R. Kern were, in 1946 and for several years prior thereto, the commissioners of Carbon County and the executive and administrative officers of the Carbon County Institution District which operated a hospital and almshouse for the poor and aged at Laurytown. In. 1946 they decided to erect a building of the institution district to be used for warehouse and general utility purposes. In connection with its construction they expended during the year 1947 funds of the institution district to the amount of $21,231.58. Their term of office expired in January, 1948, and they did not stand for re-election. The controller of the county filed an audit of their receipts and expenditures both as commissioners of the county and as officers of the institution district for the fiscal year 1947. This audit imposed no surcharge upon them but the county appealed from the audit, listing 19 items on the basis of which it contended that they should be surcharged. The court framed an issue in which they were made plaintiffs and the county defendant. Pleadings having been filed, a jury trial was had at which all but part of one of the items attacked by the county were either withdrawn, ruled out by the court, or found for plaintiffs by the jury. As to the $21,231.58, however, expended for the construction of

the warehouse building, the court directed the jury to find a verdict for the county. From the judgment entered on that directed verdict plaintiffs now appeal.[1]

The first question raised by appellants is in regard to the county's right to appeal from the controller's report. They argue that the provision of the General County Law of May 2, 1929, P. L. 1278, §379, that an appeal may be taken from the controller's report to the court of common pleas either by the Commonwealth, the county, the officer affected, or ten or more taxpayers in behalf of the county, is here inapplicable because institution districts were not created until the enactment of the County Institution District Law of June 24, 1937, P.L. 2017, and therefore the right of appeal given to the county under the Act of 1929 should not be construed as conferring a similar right under the Act of 1937 in which there was no express provision for such an appeal. We interpret the matter differently, however, than as thus contended. The 1937 Act, §302, provided that the commissioners of each county should be the executive and administrative officers of the institution district of that county. The amendatory Act of July 3, 1941, P.L. 256, provided that the commissioners of the county should keep accurate accounts of the moneys of the institution district, such accounts to be audited by the county controller, that the commissioners, as officers of the institution district, should be subject to the same fiscal supervision and control as provided by law with respect to county funds, and that the controller should keep a full and regular set of books of all the fiscal operations of the institution district and each year make a report to the court of common pleas of the county of all receipts and expendi-

---

[1] One of the commissioners, Homer R. Kern, having died in 1948, John Deutsch was appointed administrator pendente lite of his estate and as such is now one of the appellants.

.tures of the institution district for the preceding year, such report to be published "in conjunction with, and as a part of, the similar report of the fiscal affairs of counties." Thus the controller's report of the fiscal affairs of the institution district was assimilated to his report of the fiscal affairs of the county, whereby it became subject to the same regulations and provisions. We hold, therefore, that the county had the right to appeal from the controller's report, and, further, that the court properly directed the form in which the issues were to be entered, as provided by section 380 of the General County Law.

In 1946 the physical properties of the Carbon County Institution District consisted of a main hospital building, a smaller hospital or dormitory building, an administration building, and several minor structures. There being apparent need for greater facilities for the storage of food, dry goods and medical supplies, appellants decided that another building was necessary for those purposes as well as for a central office for the receipt and disbursement of materials and supplies, a milk cooling and preparation plant in close proximity to the cattle barn, and a recreation room for the use of the personnel and the ambulatory inmates. Accordingly they employed an architect and had plans and specifications prepared by him for the proposed structure. The plans provided for a building about 50 feet in width and 68 feet in length; on the first floor there was provision for an office, some fairly large rooms for storage of provisions, a recreation room, and a room for the cooling and preparation of milk; the second floor plan provided for a number of rooms for the storage of materials and supplies, which, however, could be used to house nurses and other personnel if a need therefor arose in the future, and there was provision for a small laundry at the rear; later the plans were revised whereby the building was somewhat

lengthened in order to furnish space for several additional rooms. Appellants strenuously insist that no provision was made in the building for the housing of either inmates or juvenile delinquents, nor was any part of it intended for such a purpose. The plans and specifications were approved in writing by the Department of Labor and Industry of the Commonwealth. Bids were sought for various materials and supplies and wherever bids were received the purchases were made from the lowest responsible bidders. Practically all of the lumber required came from standing timber owned by the institution district; all labor employed on the project was performed by regular employes of the county and the institution district; the hauling and trucking of materials and supplies were, for the most part, in vehicles of either the county or the institution district. No single expenditure was made for materials in excess of $500, with the exception of the heating, plumbing and electrical work, which was contracted for in writing after compliance with statutory requirements. No testimony at the trial indicated, nor was it indeed contended, that the cost of the work was excessive; on the contrary, an expert contractor and builder gave an opinion as to the reasonable and fair cost of the construction of the building which was considerably greater than the actual cost. Due to shortages of materials in 1947 the building was not wholly completed when appellants retired from office in 1948.

It is the contention of the county that the surcharge directed by the court below was proper because the building had been erected by appellants without authority and therefore in violation of law in that the plans and specifications had not been approved by the Department of Welfare, the State Art Commission, a Grand Jury, and the Court of Common Pleas, and also because appellants had not advertised for bids for a general contract for the construction of the building.

The court below was of opinion that approval by the Welfare Department of the Commonwealth was required by section 16 of the Act of May 25, 1921, P. L. 1144, and by section 305 of the County Institution District Law. The former of those acts provided that all plans for the erection or substantial alteration of any State institutions, county prison, almshouse, poorhouse, or any building for the care of delinquent children or persons of unsound mind, and all charitable institutions receiving aid from the Commonwealth, should be submitted to, and approved by, the Department of Welfare; and such buildings should not be built or such alteration made or contracted for until such approval had first been had and duly filed with those charged with the management of such institution. It is clear that the building here in question was not of the nature of any of those described in that act; (see definition of "State institutions" in section 8). As far as the County Institution District Law is concerned, section 305 provided that the county commissioners should have the power and duty to erect, alter and add to institutions for the care of dependents, and that any plan for the erection or substantial alteration of an institution must be approved by the Department of Welfare. But section 102 defined "institution" as "an infirmary, poorhouse, almshouse, hospital or sanitarium managed by the commissioners of the county"; obviously a warehouse is not included in that terminology. It would appear, therefore, that there is no legislation which requires approval by the Department of Welfare of the plans for a building of this type; this is quite understandable in view of the fact that the essential function of that Department is to supervise the treatment of sick or injured persons in hospitals, and to take care of dependent, delinquent, defective and crippled children and persons mentally diseased, so that it has no real concern with a building prin-

cipally designed for office and storage purposes, even though at some indefinite time in the future a very small part of the structure may possibly be used for the accommodation of nurses or other personnel. However, the question whether approval by the Department of Welfare was necessary in this instance is academic in view of the apparently conceded fact that in 1948, after appellants' term of office had expired, that Department did approve the revised construction plans of the building.

The Act of May 1, 1919, P. L. 103, section 5, provided that no construction or erection of any public building or other structure, to be paid for, either wholly or in part, by appropriation from the State Treasury or from any subdivision of the State, should be begun unless the design and proposed location thereof should have been approved by the State Art Commission. We are in accord with the opinion of the court below that this act made it mandatory upon appellants to obtain such approval. They contend that, since institution districts did not come into existence until 1937, they are not included in the term "any subdivision of the State" in the 1919 Act. However, such designation must be held to embrace not only all types of "subdivision of the State" which then existed but also those which, subsequently created, fell within that classification. County Institution Districts are State agencies performing governmental functions: *Chester County Institution District v. Commonwealth,* 341 Pa. 49, 57, 17 A. 2d 212, 216; *Pennsylvania Turnpike Commission Land Condemnation Case,* 347 Pa. 643, 648, 32 A. 2d 910, 913; *Heilig Bros. Co., Inc. v. Kohler,* 366 Pa. 72, 77, 76 A. 2d 613, 616.

The court below held that approval of the plans and specifications of the building by a grand jury and the court of common pleas of the county was required by section 561 of the General County Law, and by

section 310 of the County Institution District Law. The former of those acts provided that the commissioners should submit to the judges of the court of common pleas for their approval the plans and specifications for the proposed erection of a court house, jail or other county building. The latter act provided that the commissioners, as officers of the institution district, should be subject to the same fiscal supervision and control as provided by law with respect to county funds. Since, therefore, *county* funds may not be expended for the construction of county buildings without the approval of the plans and specifications by the court of common pleas, the funds of the *institution district* cannot be so expended without similar approval; it would be quite anomalous to hold that although the commissioners require court approval of the plans of a county building they may, as executive and administrative officers of the institution district, erect an institution district building without such approval. Appellants argue that the term "county building" in section 561 of the General County Law should not be construed to include a building of the present type but only a building necessary for the conduct of the "ordinary" affairs of the county; this, however, would be too narrow a construction, for any building erected by the commissioners for public use and to be paid for by the taxpayers of the county, whether it be for the relief of the sick and indigent or for the transaction of the official business of the county, must be deemed to be a county building, and, as such, receive the approval of the court of common pleas. Incidentally, it may be noted that section 552 of the General County Law provides that the commissioners must obtain court approval before altering or enlarging any of the "public buildings" of the county, and certainly, therefore, the original construction of any public building of the county should, a fortiori, require such approval.

There is no requirement in the statutes of any approval by a grand jury of the construction of the present building. Section 615 of the General County Law provided that approval by a grand jury and by the court of quarter sessions of the county was required before the erection by the commissioners of a building for the sheltering and maintaining of the poor, sick or insane of the county,[2] but obviously that provision is not applicable here.

The court below, relying on Section 315 of the County Institution District Law, was of opinion that appellants should have advertised for bids for a general contract for the construction of the building. That section provided that it should be the duty of the commissioners to purchase all supplies for the maintenance of the inmates of the institutions under their supervision by written contract where there was involved an expenditure of $500 or more, with advertisement for bids and award to the lowest responsible bidder. But the construction of a building and the obtaining of materials and labor for that purpose cannot be regarded as the purchase of "supplies for the maintenance of the inmates of the institutions": *Commonwealth v. Rankin, (No. 2)*, 158 Pa. Superior Ct. 12, 16, 43 A. 2d 441, 443. Moreover, the testimony indicates that no expenditure was in fact made for materials in excess of $500 except in the case of the heating, plumbing and electrical work and *that* work was let in compliance with all statutory requirements. As to the requirement that there should have been one general contractor for the work, the law did not preclude appellants from carrying out the project in the manner they adopted, that is, by having the work performed prin-

---

[2] Section 615 of the General County Law was repealed by the Act of April 11, 1949, P. L. 428.

cipally by their own employes: *Ruggles v. Moore*, 97 Pa. Superior Ct. 47, 52, 53; 43 Am. Jur. 773, §32.

Briefly to summarize, therefore, appellants, in our opinion, failed to comply with two legal requirements, namely, to obtain the approval of the plans and specifications by the State Art Commission and by the judges of the court of common pleas. This brings us, then, to a consideration of the Act of May 15, 1945, P. L. 538, which provided that no elected or appointed official of any political subdivision should be surcharged for any act, error or omission in excess of the actual financial loss sustained by the political subdivision by reason thereof, and the surcharge of any such official should take into consideration as its basis the results of such act, error or omission and the results had the procedure been strictly according to law. Section 2 of the act provided that "The provisions of this act shall not apply to cases involving fraud or collusion on the part of such officers, . . . ." The court below came to the conclusion that appellants were guilty of fraud and that the act of 1945 was therefore inapplicable to the case. With this we are unable to agree. It is true that the burden of proof, generally speaking, was upon appellants (*In re Auditors' Report*, 245 Pa. 17, 21, 91 A. 517, 518). But there was error in holding *as a matter of law* that fraud had been committed; whether fraud has actually been committed "is always a question for the jury, and however convincing may be the evidence on the subject, it would be to confound the province of the two tribunals for the court to assume the decision of it": *Loucheim Brothers v. Henszey, Administrator*, 77 Pa. 305, 308; *Fry v. National Glass Co.*, 219 Pa. 514, 520, 69 A. 56, 58. Moreover, fraud is never presumed but must be established either by direct proof, or by facts clearly proved sufficient to warrant a presumption of its ex-

istence: *Pocono Spring Water Ice Co. v. American Ice Co.*, 214 Pa. 640, 645, 64 A. 398, 399; *Addleman v. Manufacturers' Light & Heat Co.*, 242 Pa. 587, 590, 591, 89 A. 674, 675; *Compton, Receiver, v. Heilman,* 331 Pa. 545, 550, 1 A. 2d 682, 684. In the present record there does not appear even a scintilla of evidence that would justify a presentation to a jury of the question whether appellants had been guilty of fraud; there is not the slightest intimation that they had in mind personally to profit or that they did in fact profit, from the construction of the building, or that they desired or obtained any benefit from it whatever. The court based its conclusion of fraud principally upon certain correspondence which took place between appellants and the Department of Welfare. It appears that in January, 1947 the Department wrote to them calling their attention to the fact that the plans for the proposed building had not been submitted for approval; to this they replied that they were not planning to erect a building which would house any inmates, but were merely constructing a warehouse. The Department then wrote requesting further information in that regard, and appellants again replied that they did not intend to house guests or personnel in this warehouse building. The mere fact that there was some slight provision in the building whereby, if the need arose at some future time, there might be some accommodations for nurses, would not stigmatize their statements in this correspondence as being false or deceptive. Moreover it appears that they acted under the advice of their solicitor that the approval of the Department of Welfare was not necessary, which advice, as we are now holding, was correct. Furthermore, as was said in *Scranton School District Audit (No. 1),* 354 Pa. 225, 230, 47 A. 2d 288, 291: "Even if their failure to comply with the provisions of the Code had been a conscious dereliction on their part it would not neces-

sarily have stamped their action as dishonest. Honesty is concerned with the moral rather than the legalistic import of an act; these directors were not guilty of any moral turpitude."

In the absence, then, of fraudulent conduct on the part of appellants it is their claim that the surcharge imposed by the court was unjustified because, as they contended, neither the institution district nor the county suffered, or will suffer, loss by reason merely of the failure of appellants to obtain the necessary approval of the plans and specifications by the State Art Commission and the judges of the court of common pleas. The Act of 1945 provides, as previously stated, that no official shall be surcharged for any act, error or omission in excess of the *actual* financial loss sustained by the political subdivision by reason thereof. Was there in the present instance any such loss sustained, or will any in the future be sustained, by the Carbon County Institution District? It is obvious that the answer to this question depends upon whether the building as it now stands is, or is not, of any value to the institution district. True, it is not quite completed, but appellants contend that it can be finished and made usable by the expenditure of very little additional money and, when completed, it will serve a vital need because the institution district is sorely in need of the storage facilities which the building was designed to provide; indeed there was testimony that it has actually been used to some extent since appellants retired from office. Certainly, if the institution district should hereafter complete the building and use it, it would be inequitable and unjust to make appellants contribute out of their own pockets the sum of $21,000 toward its cost. Of course the required approvals by the State Art Commission and the court of common pleas of the county will have to be obtained nunc pro tunc, and if they be given conditionally so as to involve

the expenditure of additional money which would have been avoided had they been originally procured, appellants would be properly surchargeable for such amounts. If, however, these necessary approvals are refused,—not arbitrarily but for reasonable cause,—so that the building will be dismantled or at least never used by the institution district, appellants would properly be subject to the surcharge imposed upon them by the court below. As a practical matter, therefore, and to do complete justice under the circumstances, the court is of opinion that application should be made by the present commissioners for the necessary approvals hereinbefore indicated, as a result of which the issue can properly be presented to a jury as to what, if any, is the actual financial loss suffered, or that will be suffered, by the institution district by reason of the failure of appellants to observe all the legal requirements in connection with the erection of this warehouse building.

The judgment is reversed and the record remanded for further proceedings in accordance with this opinion.