## Gerfin v. Colonial Smelting & Refining Company, Inc., Appellant.

Argued April 14, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

Appeal, No. 87,

*John Milton Ranck,* with him *Herbert S. Levy* and *Appel, Ranck, Levy and Appel,* for appellant.

*John W. Beyer,* with him *Arnold, Bricker & Beyer,* for appellee.

OPINION BY MR. JUSTICE BELL, May 27, 1953:

Plaintiff brought an action in assumpsit to recover additional commissions of $9,088.44 with interest, which he claimed to be due him, because the oral agreement for commissions made between himself and the de-

fendant in July, 1948, and for which he had been paid in full, was obtained by defendant's fraudulent misrepresentation. The jury rendered a verdict for plaintiff's claim with interest; defendant's motion for judgment n.o.v. and for a new trial were dismissed; judgment was entered on the verdict, and from such judgment defendant took this appeal.

Stripped of unessentials, and matters that are here immaterial or irrelevant, the facts may be thus summarized.

Plaintiff, who was a salesman or broker, entered into an oral agreement with defendant in *June*, 1948 under which he was to receive a commission from the defendant on all aluminum scrap sold by the defendant to the New Holland Metals Co. (hereinafter called "Holland"). The rate of commissions was in dispute. However, six weeks later, viz., in July, 1948, plaintiff averred and testified he agreed to accept a commission of $2.50 per ton instead of $5 a ton as agreed to in June because of defendant's fraudulent misrepresentation that the commission which defendant was receiving from Holland had been reduced from $20 a ton to $10 a ton. This is the crucial issue in the case, and the sole question is whether plaintiff's evidence of fraud was sufficient in quality to take the case to the jury.

We recently said in *Wagner v. Somerset County Memorial Park*, 372 Pa. 338, 341, 93 A. 2d 440: "It is well settled that fraud must be proved by clear and convincing evidence: New York Life Insurance Company v. Brandwene, 316 Pa. 218, 172 A. 669; Suravitz v. Prudential Insurance Co., 261 Pa. 390, 104 A. 754; Pusic v. Salak, 261 Pa. 512, 104 A. 751; Campdon v. Continental Assurance Co., 305 Pa. 253, 157 A. 464. ..." Other cases thus expressed the same rule: " 'The evidence of fraud must be clear, precise and indubitable; otherwise it should be withdrawn from the

jury': *Pennsylvania R.R. Co. v. Shay*, 82 Pa. 198, 203. 'Whether the evidence is true is a question of fact . . . but whether it meets the required standard which justifies its submission to the jury . . . is always a question of law . . . .' ": *Aliquippa National Bank v. Harvey, Exrx.*, 340 Pa. 223, 231, 16 A. 2d 409. How stands the record?

On or about June 21, 1948 plaintiff telephoned an officer of defendant that he had an outlet for aluminum scrap. As a result of this telephone call, he had an interview that same day with two of defendant's officers, Zuckerman and Sanger. As a result of this interview, plaintiff and Sanger and Zuckerman went to the New Holland Metals Co. Plaintiff introduced them to Holland's purchasing agent and defendant thereafter entered into a contract with Holland to supply it with aluminum scrap. Accordingly defendant bought overseas, mostly in Europe, 7 million odd pounds of aluminum scrap which it sold and delivered to Holland. On these sales it paid plaintiff for his services in bringing the parties together a commission of $\frac{1}{8}$ of a cent per pound or $2.50 a ton, or a total of $9,088.44.

Plaintiff was also employed as a salesman by defendant, and on other business he earned, from July, 1948 to February, 1949, when he left the company, an additional $2,000.

Although plaintiff was paid his commissions on the Holland sales at the rate of $2.50 per ton and accepted the same in full, neither at any time when he was with the company, or for a year thereafter did he ever make any claim for additional commissions. He first made a claim for additional commission in January, 1950; on October 27, 1950 he issued a complaint in assumpsit.

Plaintiff in his complaint alleged that "On or about the 21st day of June, 1948, plaintiff entered into an oral agreement with defendant containing the following

terms: (a) Plaintiff *turned over to defendant his account** with New Holland Metals Co. for the supply of aluminum scrap at a commission of Twenty ($20.00) Dollars per ton." This was untrue in that plaintiff never had any account with New Holland Metals Co. "(b) Defendant agreed to pay plaintiff the sum of Five Dollars per ton on all aluminum scrap supplied New Holland Metals Company, . . .". This averment defendant denied.

On September 24, 1951, a jury having been sworn, the case was continued to enable plaintiff to file an amended complaint. On November 23, 1951 an amended complaint was filed, in which plaintiff again untruthfully averred that he had turned over to defendant his account with Holland. Plaintiff again averred the $5 per ton oral agreement in June, 1948, but added the following: "4. During the third week of July, 1948, the defendant *fraudulently represented* to the plaintiff that the commission which they, the defendants, were receiving from New Holland Metals Co. had been cut in half. 5. *Based on the aforesaid fraudulent inducement and representation,* the plaintiff agreed to reduce the commission to be paid to him to the amount of Two and 50/100 ($2.50) Dollars per ton." Plaintiff then averred that upon discovery of the fraud he became entitled to commissions at the rate of $5 per ton. Defendant denied the agreement to pay $5 a ton and on the contrary averred that the commission agreed upon always was $2.50 a ton on aluminum scrap sold by it to Holland; and denied that it ever told plaintiff its commissions had been changed or cut or reduced.*

---

* Italics throughout, ours.

* Plaintiff also claimed commissions on scrap sold by defendant to another company but the lower Court properly directed a verdict for defendant on this count, as plaintiff utterly failed to produce any evidence to substantiate his claim.

Plaintiff admitted (1) that he had received a monthly statement from defendant commencing in September, 1948, showing the sales by it to Holland of aluminum scrap, and a commission due him of ⅛ of a cent a pound or $2.50 a ton; and (2) that defendant had paid him in full on that basis for all the months in question, namely, July, 1948 to February, 1949, inclusive; and (3) that he received, commencing in September, 1948, copies of invoices sent by defendant to Holland showing that Holland was paying defendant a commission of $20 a ton; and (4) that never once had he objected to the amount of commissions paid to him, or asked defendant for more, or told defendant that he was entitled to additional commissions until January, 1950. He never made any claim for additional commissions because "it would be useless to talk to them about it." Nevertheless, having run out of money, (5) he went to see Mr. Sanger late in November, *1949* and asked him for approximately $80 which defendant had erroneously deducted from his wages for withholding taxes. He testified that at this interview he told Sanger he owed defendant some money for some calking lead which they had sold him on credit ($87), but that he couldn't pay it now. However, he persuaded Sanger to give him $37 or $50 to enable him to take a trip to Indiana on his personal business, and to deduct it from the $80 withholding taxes, and credit the balance on the $87 which plaintiff owed them. These actions and these admissions obviously belied his present claim.

Plaintiff, over defendant's objection, called Zuckerman, a former vice president of defendant, who is now in a competing business and has a claim against defendant, as for cross examination. This witness was either constantly evasive or could not remember. Zuckerman corroborated plaintiff in his testimony that the agreement in June, 1948 was for $5 a ton commis-

sions; but *on the crucial point* in issue, namely, the fraudulent misrepresentation that defendant's commissions from Holland had been cut in half and reduced from $20 a ton to $10 a ton, his answer was that he "didn't recall", he "didn't remember", and "I would say 'No', but I still don't remember the conversation". Zuckerman did deny plaintiff's other testimony that he was to be paid a commission on other business which he, plaintiff, attempted to recover for in this suit.

Sanger clearly, strongly and positively denied ever telling plaintiff that defendant's commissions with Holland had been cut or reduced from $20 to $10 a ton, or that they had ever been cut or reduced, or that there ever was an agreement for more than $2.50 a ton commissions. Other evidence was produced by defendant corroborating Sanger's testimony and proving that plaintiff had received statements and copies of invoices every month showing commissions to defendant of $20 a ton on the aluminum scrap it sold to Holland, and otherwise discrediting plaintiff's claim.

All parties agree that plaintiff never once asked for or claimed the additional commissions for which he is now suing, until January, 1950.

The narrow question that arises is whether plaintiff's evidence was of sufficient quality to meet the prescribed standard of proof in cases where fraud is the basis of the claim. As Mr. Justice, now Chief Justice, STERN said in *Stafford v. Reed,* 363 Pa. 405, 407, 410-411, 70 A. 2d 345: "An appellate court will ordinarily accept as conclusive the findings of fact of a chancellor approved by the court en banc, but this rule is not applicable where the evidence, in order to prevail, must be clear, precise and indubitable or where it must meet some other prescribed standard of proof. Whether findings are supported by evidence of that quality is al-

ways a question of law and therefore reviewable by the appellate court.*. . .

"What is meant by the statement that the evidence must be clear, precise and indubitable? It means that the witnesses must be 'credible, . . . distinctly remember the facts to which they testify, and narrate the details exactly.' (Leonard v. Coleman, 273 Pa. 62, 69, 116 A. 550, 552; Miller's Estate, 279 Pa. 30, 38, 123 A. 646, 649); that the evidence 'is not only found to be credible, but of such weight and directness as to make out the facts alleged beyond a reasonable doubt.' (Vogel, Administrator, v. Taub, 316 Pa. 41, 43, 173 A. 270, 271; Doneyho v. Scottdale Connecting R.R. Co., 330 Pa. 207, 209, 199 A. 162, 164); that 'the witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.' (Broida v. Travelers Insurance Co., 316 Pa. 444, 448, 175 A. 492, 494; Foley, Executor, v. Wasserman, 319 Pa. 420, 424, 179 A. 595, 597; Aliquippa National Bank v. Harvey, Executrix, 340 Pa. 223, 232, 16 A. 2d 409, 414; Tate v. Metropolitan Life Insurance Co., 149 Pa. Superior Ct. 558, 562, 27 A. 2d 283, 285)." Cf. also *Berardini v. Kay,* 326 Pa. 481, 192 A. 882.

---

"* Ralston v. Philadelphia Rapid Transit Co. (No. 1), 267 Pa. 257, 269, 110 A. 329, 333; Miller's Estate, 279 Pa. 30, 38, 123 A. 646, 649; Horsey v. Ciaroro, 280 Pa. 513, 517, 124 A. 677, 678; Witten v. Stout, Executor, 284 Pa. 410, 413, 414, 131 A. 360, 361; Keys, Administratrix, v. Hanscom Bros., Inc., 288 Pa. 389, 392, 135 A. 860, 862; Broida v. Travelers Insurance Co., 316 Pa. 444, 447, 175 A. 492, 494; Berardini v. Kay, 326 Pa. 481, 486, 192 A. 882, 884; Aliquippa National Bank v. Harvey, Executrix, 340 Pa. 223, 231, 232, 16 A. 2d 409, 414." See also to the same effect: *Wagner v. Somerset County Memorial Park, Inc.,* 372 Pa. 338, 345, 93 A. 2d 440.

Was the plaintiff's evidence of fraud, considered as a whole, so clear and convincing or so clear, precise and indubitable as to warrant submission of the case to the jury? Plaintiff's testimony on direct examination of the modification of the original contract from $5 a ton to $2.50 a ton was brief, clear and direct; his proof (and credibility) were rendered quite doubtful by his own witness, Zuckerman, who was obviously hostile to the defendant; his case was tremendously weakened by his own admissions that he had received from defendant copies of invoices sent to Holland showing commissions due to defendant on aluminum scrap sold to Holland of $20 a ton, as well as monthly commission statements showing commissions due him of $2.50 a ton *for which he was paid in full;* his case was further weakened by his admissions that for a year and 4 months after discovering defendant's alleged fraud he made no protest, objection or claim; and finally, even when he was broke, he not only made no claim for additional commissions but in November, 1949 admitted he owed defendant money and merely asked defendant to give him $80 or any part of it to enable him to get to Indiana to transact some personal business there. When we add to all of this the further fact that both in his complaint and amended complaint he untruthfully swore that he turned over to defendant his account with Holland, when he never had any account with Holland; and the further fact that, in order to recover, he set forth in his amended complaint a claim based (for the first time) upon fraud, it is clear that his credibility and the validity of his entire claim have been impeached, and that his evidence and the record which he made, taken as a whole, is neither clear and convincing, nor clear, precise and indubitable. Consequently, plaintiff's claim based upon his evidence and the record which he presented does not measure up to

the quality or standard required to prove fraud and under the authorities hereinabove cited should not have been submitted to the jury.

The Court below based its refusal of a judgment n.o.v. on an excerpt from *Davis v. Carbon County*, 369 Pa. 322, 333, 85 A. 2d 862, which says: "... whether fraud has actually been committed 'is always a question for the jury ...'". This is an incorrect interpretation of the opinion in that case and of the law. In that case, where commissioners were surcharged, the Court below held that they were guilty of fraud *as a matter of law.* Such a finding could only be made by a jury and not by a Court. This, however, is very different from saying that whether evidence meets the standard of proof required of one alleging fraud is never a matter of law for the Court. The trial Judge has overlooked the fact that in that case this Court reversing the lower Court held that there was not a scintilla of evidence that would justify a presentation to the jury of the question of whether the commissioners had been guilty of fraud. That case supports the present appellant not the appellee.

The judgment is reversed and judgment non obstante veredicto is here entered for the defendant.